ROBERT FLEISCHER, Plaintiff-Appellee, v. BOARD OF COMMUNITY COLLEGE DISTRICT NO. 519, Defendant-Appellant.

Second District   No. 83—1126

Opinion filed November 9, 1984.

Thomas J. Piskorksi and R. Theodore Clark, Jr., both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

Plaintiff, Robert Fleischer, was first employed by defendant board of trustees as a teacher for the 1967-68 school year. At some time prior to November 1, 1978, the board became concerned with plaintiff's teaching performance. Rather than dismiss the plaintiff, however, the board, in December of 1978, agreed to adopt a plan suggested by Terry Fortman, the president of the Highland Community College Faculty Senate (the faculty's union). The plan called for the creation of a faculty peer committee that would work with the plaintiff for one year to improve his performance in the areas the board felt he was weak. At the end of one year the plaintiff's supervisor would evaluate what, if any, improvement had been made and would make a recommendation as to plaintiff's future employment.

The following year, on December 7, 1979, the plaintiff received a letter notifying him that he would no longer be employed as of May 24, 1980, when his present employment contract expired. The letter stated his performance had been evaluated and no improvement had been found. This decision was voted on and adopted by a majority vote of the board of trustees on December 18, 1979. It is undisputed that this action was based on alleged cause and not as a result of a decision to reduce the number of faculty members or to discontinue any particular type of teaching service or program.

At all times material to this case, there was a collective bargaining agreement in effect between the board and the Highland Community College Faculty Senate. On January 14, 1980, the plaintiff filed a grievance protesting his dismissal. On February 12, 1980, the college president, Howard Simms, denied plaintiff's grievance. On February

22, 1980, plaintiff appealed that decision to the board, and on March 31, 1980, the board denied plaintiff's appeal. On April 14, 1980, plaintiff further appealed the grievance to arbitration. On April 25, 1980, the board refused to submit the grievance to arbitration.

On May 6, 1981, the plaintiff filed a two-count complaint in the circuit court of Stephenson County. Count I alleged that plaintiff had become tenured on January 1, 1980, under article IIIB of the Public Community College Act (Ill. Rev. Stat. 1981, ch. 122, par. 103B—1 *et seq.*), and, therefore, his dismissal was unlawful. Count I requested reinstatement with back pay. Count II alleged that there was a collective bargaining agreement between the board of trustees and the faculty senate which contained a grievance-in-arbitration clause requiring the board of trustees to arbitrate plaintiff's dismissal. Count II requested an order compelling arbitration of plaintiff's dismissal grievance.

The board of trustees then filed a motion to dismiss on June 11, 1981, which was denied as to count I, but granted as to count II. The parties then stipulated to the facts and cross-motioned for summary judgment. On February 3, 1983, the trial court denied defendant's motion for summary judgment and granted plaintiff's motion for summary judgment. The defendant appeals from the denial of its motion for summary judgment and the plaintiff cross-appeals from the order dismissing count II of its complaint.

The defendant's appeal of this case presents a matter of statutory construction. Article IIIB of the Public Community College Act became effective on January 1, 1980. The plaintiff was notified in December of 1979 that his teaching contract would not be renewed, but continued to teach until May of 1980, when his current contract ran out. Section 3B—2 of the Act states:

"Any faculty member who has been *employed* in any district for a period of 3 consecutive school years shall enter upon tenure unless dismissed as hereinafter provided." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 122, par. 103B—2.

The issue, therefore, is whether the plaintiff was "employed" on January 1, 1980, for purposes of acquiring tenure under the Act.

The trial court held that the term "employed" must be given its common and usual meaning of an employee-employer relationship. Based on this definition, the plaintiff was employed on January 1, 1980, and acquired tenure under the Act, making his dismissal unlawful. The defendant argues, however, that the critical act under the statute is the notification of dismissal, which occurred before the statute became effective, so that the plaintiff could not have acquired ten-

ure under the statute.

The defendant cites *Delaware State College v. Ricks* (1980), 449 U.S. 250, 66 L. Ed. 2d 431, 101 S. Ct. 498, to support its argument. *Ricks* held that under the 180-day limitation period for filing a title VII claim under the E.E.O.C. and the three-year limitation period for filing a private section 1981 action, the "alleged unlawful employment practice" was the denial of tenure which occurred when the board of trustees made its official decision known to Ricks. The Supreme Court specifically rejected Ricks' claim that the unlawful practice occurred a year later when his teaching contract ran out, and held that was simply an inevitable consequence of the denial of tenure. While *Ricks* is factually dissimilar, its reasoning seems applicable here. This plaintiff claims he was terminated in violation of a statute. The wrongful act the plaintiff complains of was the board's decision not to renew his contract, which occurred in December of 1979. The fact that his contract actually ended after January 1, 1980, was simply an inevitable consequence of the earlier decision not to renew his contract. Since the decision not to renew his contract occurred before the effective date of the Public Community College Act, it was not a violation of the Act.

The trial court reasoned, however, that giving the term "employed" its ordinary and common meaning, the plaintiff acquired tenure on January 1, 1980, regardless of the earlier nonrenewal notice. While it is true that words used in a statute should be given their plain, ordinary and commonly accepted meaning (34 Ill. L. & Prac. *Statutes* sec. 111 (1958)), a plain word may be given a restrictive meaning if such is indicated by the act as a whole or by persuasive gloss of legislative history. (*United States v. Witkovich* (1957), 353 U.S. 194, 1 L. Ed. 2d 765, 77 S. Ct. 779.) Looking at the Act as a whole, we do not believe the term "employed" can be given its literal meaning as the trial court did, if the Act is to operate as the legislature intended it to.

■ Under section 3B—3, a third-year nontenured teacher must be notified of the board's decision not to renew his contract at least 60 days before the end of that year, or his contract is deemed renewed and he receives tenure. Under the trial court's interpretation, this third-year nontenured teacher would be "employed" until his contract expired at the end of his third year and would thereby enter tenure under section 3B—2's three-year requirement, regardless of whether the teacher received his nonrenewal notice. This is not the way the legislature intended the statutory scheme to work. Section 3B—3 clearly implies that if a third-year nontenured teacher is given a no-

tice of nonrenewal, that teacher will not obtain tenure. Therefore, the legislature intended that a teacher would no longer be "employed" for purposes of acquiring tenure after he has been notified that his contract will not be renewed.

Further support for this interpretation of the Public Community College Act is given by Senator Berman's (the Senate sponsor of the bill) statement during the debate on June 27, 1979:

> "The Amendment No. 1 tightened up the language of the bill so as to indicate what teachers would be covered when the bill becomes effective. Under that amendment, January 1, 1980, would be the effective date of the bill. *Any teacher that is not satisfactorily pursuing its \*\*\* his duties could be dismissed without complying with the provisions of the bill.* After January 1, 1980, any teacher that has three or four years of continued service would be under the provisions of this." (Emphasis added.)

This language implies that it was the sponsor's understanding that unsatisfactory teachers could be dismissed before January 1, 1980, without their acquiring tenure.

Since we find the plaintiff was not "employed" for purposes of acquiring tenure under the Public Community College Act, we do not reach the question of whether the Act allows teaching prior to January 1, 1980, to count towards meeting section 3B—2's three-year requirement.

Having decided the plaintiff was not wrongfully discharged under the Public Community College Act, we come to the second issue of this case, whether the trial court erred in dismissing count II of the plaintiff's complaint which requested an order compelling the board of trustees to arbitrate the plaintiff's dismissal under the collective bargaining agreement.

Illinois law is clear that when the legislature gives a community college board of trustees discretionary powers, such as whether to rehire or dismiss a nontenured teacher (Ill. Rev. Stat. 1979, ch. 122, pars. 103—30, 103—42), the power may not be delegated. (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470; *Illinois Education Association v. Board of Education* (1975), 62 Ill. 2d 127.) Therefore, the courts will refuse to compel arbitration when the arbitrator would be required to perform one of the board's discretionary duties. (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1980), 87 Ill. App. 3d 246; *Lockport Area Special Education Cooperative v. Lockport Area Special Education Cooperative Association* (1975), 33 Ill. App. 3d 789.) Plaintiff ar-

gues, however, that the Public Community College Act has overturned the law in this area by taking away the board's discretion in deciding whether to dismiss or rehire a nontenured teacher. Plaintiff points specifically to the language of section 3B—3 of the Act, which states:

"Every Board shall provide by rule or contract for a procedure to evaluate the performance and qualifications of non-tenured faculty members." Ill. Rev. Stat. 1981, ch. 122, par. 103B—3.

■ This language, while requiring the board to set up some type of evaluation process to use in its decision to renew or not to renew a nontenured teacher's contract, does not allow the board to delegate its final decision-making power. This was made clear in *Board of Trustees v. Krizek* (1983), 113 Ill. App. 3d 222. In this case, the contract of a nontenured community college teacher was not renewed, and she objected on the basis that not all of the evaluation procedures had been complied with and that the prevailing tenor of the evaluations was favorable. The court upheld her dismissal, stating:

"[T]he Supreme Court has made unmistakably clear that when a governing board is vested with the power to grant tenure, or to not renew, then the governing board cannot delegate, modify or condition its final authority to make such decisions. *** There can be no dilution of the board's authority whether the evaluation of teachers is mandated by contract or by statute. It follows then that the power to grant tenure cannot be conditioned upon the decision of an administrator to make a recommendation or hold a consultation, nor can the power be limited by the preponderance of opinion of evaluators, even though their evaluations may be conducted at the behest of the board. So long as procedure for evaluation has been implemented, and the results of those evaluations are available to the board, we believe that compliance with the statute has been achieved, and any subsequent decisions to terminate ordered by the board are statutorily sound.

We are mindful that the tenure laws represent an elaborate balance between the need to maintain the quality of schools and the opposing interest in job security. [Citation.] In striking that balance, the legislature has crafted a system where there appears to be unlimited power in boards to dismiss probationary teachers at the board's discretion while the power to dismiss tenured teachers is considerably restricted. [Citation.] We perceive Krizek's position as an attempt to erode the area of the board's discretion by injecting elements of cause into the board's decision to terminate. Inasmuch as this is repugnant to

the policy embodied in the statute, we decline to adopt the statutory construction proffered by Krizek." *Board of Trustees v. Krizek* (1983), 113 Ill. App. 3d 222, 227.

Therefore, for the reasons stated above, we reverse the trial court's granting of summary judgment for the plaintiff and remand with directions to enter summary judgment for the defendant on count I of plaintiff's complaint.

We affirm the trial court's dismissal of count II of the plaintiff's complaint.

Affirmed in part, reversed in part and remanded with directions.

REINHARD and HOPF, JJ., concur.