RAYMOND WILLIAMS, Plaintiff-Appellant, v. ROBERT WEAVER *et al.*, Defendants-Appellees.

First District (5th Division)   No. 85—1282

Opinion filed June 20, 1986.—Rehearing denied July 16, 1986.

Raymond Williams, of Chicago, for appellant, *pro se.*

Murray & Girard, Ltd., of Chicago (Michael J. Murray and Richard E. Girard, of counsel), for appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from the dismissal of plaintiff's complaint against the

board of trustees of Community College District No. 508 (board) and certain faculty members of Malcolm X College alleging breach of contract and tortious interference with prospective business and economic advantage.

The record discloses that plaintiff entered into a contract to teach business courses at Malcolm X College during the 1978 spring and fall semesters, commencing January 10, 1978, and ending December 23, 1978. In addition to general terms regarding salary and work load, the contract provided that plaintiff would be advised in writing by October 1, 1978, as to whether he would be tendered a contract of employment for the following year, and that it was "subject to applicable law, the Rules of the Board and the Board-Union agreement."

Article VIII, section J, of the collective-bargaining agreement in effect at the time contained provisions whereby recommendations on initial employment and renewal of employment contracts were to be made by eligible members of the department—in accordance with criteria and procedures agreed upon by a majority of the eligible members and published in writing—and then forwarded by the department chairperson to the college president, who was free to accept or reject them. The published criteria and procedures of the business department at Malcolm X College provided that "[d]uring or before the tenth week of each semester, all eligible department instructors must fill out the Faculty Evaluation Forms rating each instructor's professional competency."

On February 24, 1978, a grievance was filed by 14 members of the business department charging that the board violated the collective-bargaining agreement by awarding a teaching contract to plaintiff before they were given an opportunity to adjust their teaching programs and, thereby, depriving them of overtime work. The grievance was subsequently denied.

On September 28, 1978, defendant Weaver, chairman of the business education department, sent a memorandum to the vice-president for administration recommending that plaintiff's contract not be renewed, giving as reasons therefor: "(1) Poor Evaluations, (2) Incomplete Class Syllabus, and (3) Substandard Final Examination." Weaver further noted that the business department faculty had recommended that plaintiff not be hired in the first instance and that a grievance had been filed relating thereto.

In a letter from James Griggs, the college president, dated September 29, 1978, plaintiff was notified that his employment at Malcolm X College would terminate upon expiration of his one-year probationary contract. It is undisputed that the faculty evaluations enumerated above were not completed in accordance with the published criteria and

procedures.

Plaintiff then filed a grievance against the board protesting the termination decision. Although that grievance does not appear in the record, plaintiff's brief contains a copy of a letter, dated November 14, 1978, from Griggs in response thereto in which he (Griggs) stated that a review of the data presented to him did not reveal "an arbitrary or capricious approach" by Weaver; that Weaver had adhered to the substantive portions of the recommendation procedures enumerated in Article VIII, section J, of the collective-bargaining agreement; that a majority of the members of the business department had held that he (plaintiff) had not lived up to the standards adopted by the department and, therefore, had recommended that his contract not be renewed; that the "new information" submitted by plaintiff in the grievance was not sufficient to overcome the prior data submitted by Weaver; but that the matter would be remanded to Weaver for reconsideration by him and the other eligible members of the business department.

On November 15, 1978, Weaver circulated a memorandum to the members of the business department recommending that they vote "no" on the question of renewing plaintiff's contract for the reasons that (1) plaintiff had been hired despite faculty recommendations to the contrary; (2) the two teaching evaluations on file indicated poor teaching qualities; and (3) he and several other teachers had received numerous complaints from students of plaintiff's poor teaching performance. In his complaint, plaintiff states that "the eligible voting faculty voted against [his] continued employment [and] [a]s a result thereof, the Board notified [him] that his employment contract would not be *** renewed."

Plaintiff thereafter brought this action[1] for breach of contract and tortious interference with prospective advantage in the termination of his employment as a teacher at Malcolm X College. Hearings were conducted after which the trial court, on December 17, 1984, dismissed count I (breach of contract) and, on April 5, 1985, dismissed count II (tortious interference) of plaintiff's complaint. This appeal followed.

OPINION

■ Plaintiff first contends that defendants' failure to comply with the evaluations procedures required by the collective-bargaining agreement constituted a breach of his employment contract into which those evaluations provisions were incorporated.

---

[1]Plaintiff had previously filed two related suits in the Federal District Court of the Northern District of Illinois and an action in the circuit court of Cook County, all of which were, apparently, dismissed.

Defendants assert that the supreme court decisions in *Illinois Education Association v. Board of Education* (1975), 62 Ill. 2d 127, 340 N.E.2d 7, and *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470, 343 N.E.2d 473, are dispositive of this issue. Both cases were actions brought by former nontenured teachers whose employment was terminated by nonrenewal of their probationary teaching contracts. The plaintiffs alleged that the boards' noncompliance with evaluation procedures contained in the collective-bargaining agreements rendered invalid the decisions to terminate their employment by nonrenewal of their contracts. In *Illinois Education Association v. Board of Education*, the court noted that the School Code imposed upon the board the duty to appoint teachers (Ill. Rev. Stat. 1977, ch. 122, par. 10—20.7), and the right to terminate the employment of nontenured teachers by dismissal or nonrenewal of their contracts (Ill. Rev. Stat. 1977, ch. 122, pars. 10—22.4, 24—11 through 24—15), and held (1) that these powers are discretionary and nondelegable and could not be subordinated to the terms of a collective bargaining agreement, and (2) that termination in compliance with the statute was valid despite noncompliance with the evaluation procedures.

In *Board of Trustees v. Cook County College Teachers Union*, a consolidation of three cases involving an arbitrator's award of a teaching contract to previously terminated probationary teachers, the court reiterated its earlier ruling, stating, "In our judgment, the holding in *Illinois Education Association* controls the result in this case. We adhere to our position there stated that the Board's duties in appointing teachers are nondelegable, and it follows therefrom that the arbitrator is without authority to award an employment contract as a remedy for the violation of a collective bargaining agreement." (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470, 476, 343 N.E.2d 473, 476.) The court further held that neither could the arbitrator order a reevaluation of the teacher in accordance with procedures prescribed thereby, reasoning that "[s]ince we held nonrenewal of the teachers' contracts valid even though accomplished without the prior performance evaluation, it is clear that the evaluation provision is not enforceable against the Board." (62 Ill. 2d 470, 476, 343 N.E.2d 473, 476), and that since the evaluation was not an obligation of the board, but was to be conducted by the faculty, nonrenewal of the contracts in the absence of that evaluation does not constitute an impairment by the board of the employment contract.

Plaintiff acknowledges that his position is in direct contradiction to that expressed by the supreme court, but argues that the error of the rulings in those cases is evidenced by the legislature's enactment of

section 103B—3 of the Public Community College Act (Ill. Rev. Stat. 1981, ch. 122, par. 103B—3) (Tenure Act), which states:

"Every Board shall provide by rule or contract for a procedure to evaluate the performance and qualifications of non-tenure faculty members. If the implementation of such procedure results in a decision to dismiss a non-tenure faculty member for the ensuing school year or term, the Board shall give notice thereof to the faculty member not later than 60 days before the end of the school year or term. The specific reasons for the dismissal shall be confidential but shall be issued to the teacher upon request. If the Board fails to give such notice, within the time period, the faculty member shall be deemed re-employed for the ensuing school year. ***."

Plaintiff urges that this section was intended to clarify already-existing duties imposed upon the board with respect to the procedures to be followed prior to termination of a teacher by contract nonrenewal and thus, in effect, overrules the holdings in *Illinois Education Association v. Board of Education* and *Board of Trustees v. Cook County College Teachers Union, Local 1600.* In essence, he is arguing that section 103B—3 should be given retroactive application.

Initially, we note that nearly two years after the Tenure Act became effective, the supreme court declared the holdings in those cases to be controlling of the case before it. (*Board of Education v. Chicago Teachers Union* (1981), 88 Ill. 2d 63, 430 N.E.2d 1111 (board's discretionary power to close schools earlier than the date set out in its annual calendar cannot be delegated or superseded by the terms of a collective bargaining agreement).) Thus, plaintiff's argument that section 103B—3 served to overrule the earlier cases is clearly without merit.

■ Furthermore, it is fundamental that retroactive legislation is not favored (*Brucato v. Edgar* (1984), 128 Ill. App. 3d 260, 470 N.E.2d 615), and generally a statute is presumed to operate prospectively absent clear statutory language to the contrary (*Board of Trustees v. Cook County Teachers Union* (1985), 139 Ill. App. 3d 617, 487 N.E.2d 956.) While an exception to the general rule allows retroactive application without such language where the statute relates only to procedural matters, the exception does not apply where the provisions operate to create new or extinguish former obligations or rights. 139 Ill. App. 3d 617, 487 N.E.2d 956.

■ In view of the supreme court cases holding that prior to January 1, 1980—the effective date of the Tenure Act—matters relating to faculty tenure and dismissal were within the complete discretion of the board (see also *Board of Trustees v. Taylor* (1983), 114 Ill. App. 3d 318, 448 N.E.2d 1171), and could not be superseded, modified or condi-

tioned, even by the terms of a collective bargaining agreement setting forth procedures to evaluate the performance and qualifications of nontenured faculty, the provisions of section 103B—3 requiring the board to adopt and follow such procedures clearly imposes obligations and confers rights which previously did not exist; and because section 103B—3 contains no language evincing an intent by the legislature that its provisions be applied retroactively, under the well-settled rules of statutory construction, we conclude that it was intended to apply only prospectively.

Further support for this conclusion is found in *Fleischer v. Board of Community College* (1984), 128 Ill. App. 3d 757, 471 N.E.2d 213. There, the plaintiff, a nontenured teacher, was notified in December 1979, that due to a poor evaluation of his performance by his supervisor, his teaching contract would not be renewed after its expiration in May 1980— the end of the school year. Following denial of his grievance, plaintiff filed an action alleging that his dismissal was unlawful under newly enacted section 103B—2 of the Tenure Act, which provided that "[a]ny faculty member who has been employed in any district for a period of 3 consecutive school years shall enter upon tenure unless dismissed as hereinafter provided." (Ill. Rev. Stat. 1981, ch. 122, par. 103B—2.) The essence of his argument was that since he had been employed for the requisite time period as of January 1, 1980, he acquired tenure on that date and therefore could not be dismissed by nonrenewal of his contract. In affirming summary judgment for the board, the court held that because plaintiff was notified of the board's decision not to renew the contract prior to the effective date of the Tenure Act, he was no longer "employed" within the meaning of its terms and therefore did not attain tenure by virtue thereof even though he continued to teach for five months after it became effective. Here, unlike *Fleisher*, both the decision not to renew plaintiff's contract and complete performance of it occurred prior to the effective date of section 103B—3, and we therefore reiterate our opinion that his dismissal was not governed by its terms.

We next consider plaintiff's contention that count II of his complaint states a valid cause of action for tortious interference with prospective business relations and economic advantage and was, therefore, improperly dismissed.

■ In bringing an action for tortious interference, a plaintiff must show a reasonable expectancy of a valid business relationship or economic advantage, purposeful interference by the defendant which defeats that legitimate expectancy or prevents it from ripening into a valid business relationship and damage resulting therefrom. (*Titchener v. Avery Coonley School* (1976), 39 Ill. App. 3d 871, 350 N.E.2d 502;

*City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 300 N.E.2d 331.) In our view, plaintiff's complaint fails to meet the requirements necessary to sustain a cause of action based on this theory.

■ First, although he alleges numerous acts of wrongful conduct by the various defendants, plaintiff has presented no facts establishing the existence of a reasonable expectancy of an economic advantage or a continuing business relationship with the board. To the contrary, it is undisputed that his written employment contract and the collective-bargaining agreement incorporated therein specifically provided that his employment as an instructor was for a fixed term of one academic year, commencing January 10 and ending December 23, 1978, and that he would be advised of the board's decision whether or not to tender a renewal contract for the following year by October 1, 1978. The contract further provided that it was subject to applicable law which, as discussed earlier, allowed the board full discretionary power to terminate the employment of any nontenured teacher by dismissal or nonrenewal of his probationary contract. (Ill. Rev. Stat. 1977, ch. 122, pars. 10—22.4, 24—11 through 24—15; *Board of Education v. Chicago Teachers Union* (1981), 88 Ill. 2d 63, 430 N.E.2d 1111.) Thus, while plaintiff may have entertained a hope that he would remain in his position as an instructor in 1979 and future years, the mere hope of continued employment, without more, does not, in our opinion, constitute a *reasonable* expectancy as must exist to state a cause of action for tortious interference.

This conclusion comports with the holding in *Titchener v. Avery Coonley School* (1976), 39 Ill. App. 3d 871, 350 N.E.2d 502, a case presenting a similar factual situation. There, the plaintiff was employed as a teacher on a year-to-year basis for the 1971-72 through 1973-74 school terms. Sometime during the 1973-74 school year, she was notified that her contract would not be renewed for the 1974-75 term. She thereafter filed an action for wrongful discharge and tortious interference by the headmaster with her contractual relationship with the board and prospective economic disadvantage alleging, *inter alia*, that certain verbal statements by him regarding his hope for her long association with the school provided her with a reasonable expectancy of future economic advantage through continued employment at the school. The *Titchener* court affirmed summary judgment for the defendants stating that since her contract was for a definite term and had been fully performed at the time of her dismissal and because informal statements of good will will do not amount to contractual obligations, she failed to sufficiently plead the existence of a reasonable expectancy of a continuing business relationship. *Cf. Cashman v. Shinn* (1982), 109 Ill. App. 3d 1112, 441

N.E.2d 940; *Pack v. Sporleder* (1945), 327 Ill. App. 420, 64 N.E.2d 674.

However, even assuming, *arguendo*, the existence of a reasonable expectancy in this case, we find that plaintiff's complaint is neither legally nor factually sufficient to state a cause of action for tortious interference therewith.

■ With respect to the board, plaintiff alleges that it failed in its "duty to ensure a proper and professional and objective implementation and enforcement of Published Evaluation Procedures." Preliminarily, we note that since the tort of interference with prospective advantage requires a showing of action by the defendant toward a third party (*Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 480 N.E.2d 1176), plaintiff's position—which is, essentially, that the board tortiously interfered with its own business relationship with him—is both logically and legally untenable. See *Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 272 N.E.2d 708.

In addition, having already determined that the nonrenewal of plaintiff's contract was a lawful exercise of the board's discretionary power to terminate the employment of a probationary teacher, which cannot be delegated, modified or conditioned by the provisions of a collective-bargaining agreement setting forth procedures for nontenured teacher evaluations, it is axiomatic that the board had no duty, as plaintiff claims, to ensure that any such evaluations were completed. *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d. 470, 477, 343 N.E.2d 473, 477.

It also follows then that because the provisions of a labor agreement requiring faculty evaluations are not binding on the board and because the board's decision to terminate a teacher may not be conditioned thereupon, regardless of whether any such evaluations are favorable or unfavorable (*Board of Trustees v. Krizek* (1983), 113 Ill. App. 3d 3d 222, 446 N.E.2d 9410), the failure of individual faculty members to comply with prescribed evaluations procedures cannot constitute tortious interference with a probationary teacher's expectancy of a continuing business relationship as plaintiff alleges in his complaint.

■ Finally, although plaintiff recites numerous other allegations of wrongful conduct by the individual defendants—most of which concern the inclusion of false information in those evaluations which were filed and in a memorandum circulated by defendant Weaver in which he recommended that plaintiff's contract not be renewed—he has failed to present any facts to substantiate his claims that the information was in fact false. "A complaint may not rest upon conclusions of fact unsupported by allegations of specific facts from which such conclusions may be drawn." *Plocher v. City of Highland* (1978), 59 Ill. App. 3d 697, 701, 375 N.E.2d 1016, 1020.

For the reasons stated, the orders of the trial court dismissing plaintiff's amended complaint for breach of contract and his seconded amended complaint for tortious interference with prospective advantage are affirmed.

Affirmed.

LORENZ and PINCHAM, JJ., concur.