ELISABETH ANDERSON, Plaintiff-Appellant, v. RONALD VANDEN DORPEL et al., Defendants-Appellees.

First District (3rd Division)   Nos. 1—92—1401, 1—92—2751 cons.

Opinion filed October 19, 1994.—Rehearing denied January 17, 1995.—Modified opinion filed January 18, 1995.

Aron D. Robinson, of Holstein, Mack & Klein, of Chicago, for appellant.

Frederick J. Artwick, Anne E. Rea, and Mark D. Blocker, all of Sidley & Austin, of Chicago, and Thomas G. Cline, of Northwestern University, of Evanston, for appellees.

JUSTICE CERDA delivered the opinion of the court:
Plaintiff, Elisabeth Anderson, brought this action seeking dam-

ages from defendants, Ronald Vanden Dorpel and Northwestern University, for intentional interference with prospective economic advantage and defamation. The trial court granted defendants' section 2—615 (Ill. Rev. Stat. 1991, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992))) motion to dismiss count I, intentional interference with prospective economic advantage, and issued a Supreme Court Rule 304(a) finding of no just reason to delay enforcement or appeal. (134 Ill. 2d R. 304(a).) Subsequently, the trial court granted defendants' section 2—615 motion to dismiss plaintiff's defamation claim. These cases have been consolidated.

On appeal, plaintiff asserts that (1) the trial court erred in allowing an immediate appeal of count I pursuant to Rule 304(a); (2) she properly pleaded an interference with prospective economic advantage claim; and (3) the trial court erred in dismissing her claim for defamation on the basis of the innocent construction rule.

The main issue in the claim for interference with prospective economic advantage is whether plaintiff pleaded a reasonable expectation of employment.

The recitation of the facts is based on the allegations in plaintiff's complaint and amended complaint, which must be taken as true in a motion to dismiss. Plaintiff was employed for nine years as Northwestern University's director of corporate relations. All her job performance reviews were exemplary. During the 1988-89 academic school year, plaintiff raised $18.2 million for Northwestern, which was the largest amount the university had ever received from corporations.

In November 1989, plaintiff applied for a position in the fundraising department of the Young Men's Christian Association (YMCA). According to plaintiff, she had not been job-hunting when the YMCA contacted her about the position, which would have increased her pay by about $17,000 per year. Plaintiff was recommended for the position by Robert Nottleman, who was a member of the YMCA board of trustees.

On November 20, 1989, and December 6, 1989, plaintiff interviewed with various YMCA board members. Follow-up interviews were scheduled with those board members who were absent. Plaintiff was told that all the initial interviews with the board members went well, and as of December 6, 1989, she was the leading candidate. After plaintiff interviewed with Steven Crown, the director of the YMCA, on December 6, 1989, she was again assured that the interview went well. Later, she was told that she was recommended or would be recommended for hiring after she completed follow-up

interviews with the directors who had been previously unable to meet with her.

On either December 6, 1989, or December 7, 1989, Crown spoke with defendant Vanden Dorpel, who was plaintiff's supervisor at Northwestern. During that conversation, Vanden Dorpel told Crown that plaintiff "did not follow-up on assignments" and "could not get along with her co-workers." Plaintiff alleged that those remarks were untrue and Vanden Dorpel was aware of their falsity at the time he made them. He was also aware that his remarks violated Northwestern's policy regarding dissemination of information about employees.

The Northwestern University's Staff Handbook (handbook) stated that an employee's personnel file is a confidential record. Both plaintiff and defendant were aware of and bound by the handbook. The handbook provided that Northwestern would verify only an employee's dates of employment, job title, and salary, and only with the employee's written authorization, which was not given by plaintiff. The handbook further stated that no other information concerning an employee would be released and no employment information would be verified by telephone.

On December 7, 1989, the YMCA cancelled the interviews scheduled for December 8, 1989, and December 11, 1989, and did not hire plaintiff for the position.

Less than one month later, Vanden Dorpel asked plaintiff to leave Northwestern. In December 1990, after she had left the university, plaintiff filed a lawsuit claiming that she was not hired by the YMCA because of Vanden Dorpel's comments to Crown during the interview process.

On January 24, 1992, the trial court dismissed count I of the amended complaint with prejudice for failure to state a claim for intentional interference with prospective economic advantage and issued a Rule 304(a) finding. Subsequently, the trial court dismissed the defamation claim on the basis that the statements were not defamatory *per se* pursuant to the innocent construction rule.

■ Plaintiff's first assertion is that the trial court's dismissal of count I is not final and appealable pursuant to Supreme Court Rule 304(a). That issue is now moot. Since the first appeal was filed, the trial court dismissed the entire case. Thus, we are now considering the appeal in its entirety.

■ Next, plaintiff asserts that the trial court erred in dismissing her claims for intentional interference with prospective economic advantage and defamation. A section 2—615 motion to dismiss attacks only the legal sufficiency of a complaint. (*Urbaitis v. Commonwealth Edison* (1991), 143 Ill. 2d 458, 475, 575 N.E.2d 548.)

In ruling on a section 2—615 motion, all well-pleaded facts and all reasonable inferences are accepted as true. (*Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 499, 568 N.E.2d 870.) A complaint should not be dismissed for failure to state a claim unless it clearly appears that no set of facts could be proved under the pleadings entitling plaintiff to relief. (*Urbaitis*, 143 Ill. 2d at 475.) In making that determination, the court must interpret the allegations of the complaint in the light most favorable to the plaintiff. *Kolegas v. Heftel Broadcasting Corp.* (1992), 154 Ill. 2d 1, 9, 607 N.E.2d 201.

■ Bearing those principles in mind, we first consider whether the allegations in the complaint are sufficient to support a claim for interference with a prospective economic advantage. To prevail on such a claim, a plaintiff must allege facts to show: (1) her reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. (*Fellhauer*, 142 Ill. 2d at 511.) The tort of interference with prospective economic advantage may be brought pursuant to an employment relationship. *Fellhauer*, 142 Ill. 2d at 511.

The issue to be decided is whether plaintiff alleged a reasonable expectation of employment with the YMCA.

Plaintiff contends that she had a reasonable expectation of entering into a business relationship with the YMCA because she was the leading candidate for the position, was told that she would be recommended for hiring after completing follow-up interviews, and was told that her remaining interviews were routine. Thus, plaintiff argues, she was one step away from a formal offer, having been given much more than a mere interview and having much more than a mere hope of obtaining employment at the YMCA.

To support her argument, plaintiff relies on *Malatesta v. Leichter* (1989), 186 Ill. App. 3d 602, 542 N.E.2d 768, where the court affirmed the jury's finding that the plaintiff had a reasonable expectancy of obtaining a General Motors automobile dealership. The evidence showed that the plaintiff was the leading candidate to purchase the dealership because he had a buy-sell agreement to purchase the dealership, had experience in the automobile business including ownership experience, and had the means to obtain the necessary financing. (*Malatesta*, 186 Ill. App. 3d at 617.) However, the evidence also showed that the plaintiff had not yet been recommended by General Motors' zone management and that another person was the leading minority candidate for the dealership. (*Malatesta*, 186 Ill.

App. 3d at 618.) The court concluded that the plaintiff had a reasonable expectancy because General Motors was diligently considering his application and he was the prime candidate because of the buy-sell agreement. *Malatesta*, 186 Ill. App. 3d at 617-18.

Defendants respond that the trial court properly dismissed plaintiff's claim because plaintiff merely interviewed for a job, which did not create a reasonable expectancy of obtaining the position. Defendants emphasize that the amended complaint indicated that plaintiff had two more interviews with YMCA trustees, her references had not yet been contacted, she was told by an unidentified source that her interviews went well, and that an unidentified source told her that she was being seriously considered for the position.

In support of their argument, defendants rely on *Buchanan v. Serbin Fashions Inc.* (N.D. Ill. 1988), 698 F. Supp. 731, which applied Illinois law. *Buchanan* is distinguishable because that plaintiff failed to allege that (1) the defendant's actions prevented him from getting a job; (2) the employer promised to hire him; (3) the employer did anything more than grant him an interview, just as the employer had done with every other interviewee; or (4) that he was superior to the other interviewees. *Buchanan*, 698 F. Supp. at 734.

Defendants also rely on distinguishable cases that involved actions arising from the plaintiffs' expectations that current employment contracts would be renewed. In *Williams v. Weaver* (1986), 145 Ill. App. 3d 562, 495 N.E.2d 1147, the plaintiff's contract and collective bargaining agreement specifically provided that the plaintiff's employment was for a fixed term of one year and that the board of trustees had full discretionary power to terminate any non-tenured teacher. (*Williams*, 145 Ill. App. 3d at 569.) The appellate court held that the plaintiff's expectation that his fixed-term contract would be renewed did not state a claim for tortious interference because the mere hope of continued employment, without more, did not constitute a reasonable expectancy. *Williams*, 145 Ill. App. 3d at 569.

The court in *Werblood v. Columbia College* (1989), 180 Ill. App. 3d 967, 976, 536 N.E.2d 750, ruled that the plaintiff's reliance on proposed college tenure procedures that would have provided her with tenure was not a reasonable expectancy of a continuation of employment because she was discharged before the revisions had been finalized and implemented.

In *Titchener v. Avery Coonley School* (1976), 39 Ill. App. 3d 871, 876, 350 N.E.2d 502, the court held that the plaintiff's complaint failed to present sufficient factual allegations to support a cause of action for intentional interference with prospective economic

advantage since the complaint was for a contractual tort based solely on plaintiff's allegations that the defendant interfered with an already existing contract.

Defendants also cite cases outside the employment context that hold that potential recipients of a benefit do not have a sufficient expectancy to state a tortious interference claim. The court in *Stefani v. Baird & Warner, Inc.* (1987), 157 Ill. App. 3d 167, 175, 510 N.E.2d 65, held that prospective buyers of a home failed to allege a reasonable expectancy since they were merely one of a number of potential buyers of the property. In *Kemmerer v. John D. & Catherine T. MacArthur Foundation* (N.D. Ill. 1984), 594 F. Supp. 121, 122, the court, applying Illinois law, held that the plaintiff's expectation of receiving a sales commission was insufficient because it was contingent on the defendants actually selling their property.

■ The reality of plaintiff's situation seems to fall between her argument that she was all but hired and defendant's contention that she was merely an interviewee. A reasonable expectation of employment is shown by identifying a third party that contemplated a prospective contractual arrangement with the plaintiff and a reasonable expectation that the plaintiff will be employed. *Werblood*, 180 Ill. App. 3d at 975.

If the allegations in the complaint are true, as we must consider them, plaintiff would have a reasonable expectation of being hired by the YMCA. The allegations demonstrate that the YMCA contemplated hiring plaintiff. According to the complaint, plaintiff was not a mere interviewee. She had progressed to the final set of interviews. After plaintiff interviewed with various board members and the director, follow-up interviews were scheduled with those board members who had not met with plaintiff. As of December 6, 1989, plaintiff was the leading candidate. She was told that she had been recommended or would be recommended after the final follow-up interviews.

If those allegations are proven, plaintiff would have a reasonable expectancy of being hired. Reasonable expectancy does not mean that she already has a job offer. We believe a reasonable expectation means a legitimate or genuine expectation.

Next, plaintiff asserts that the trial court improperly dismissed her valid claim for defamation on the basis that Vanden Dorpel's statements were not defamatory under the innocent construction rule.

■ A statement is defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with her. (*Kole-*

*gas*, 154 Ill. 2d at 10.) Statements are considered defamatory *per se* when the defamatory character of the statement so obviously injures the plaintiff's good name or reputation that the plaintiff need not prove injury or damages. (*Kolegas*, 154 Ill. 2d at 10.) Statements that are defamatory *per se* include those imputing an inability to perform or want of integrity in the discharge of duties of one's employment and those prejudicing or imputing lack of ability in her profession. (*Kolegas*, 154 Ill. 2d at 10; *Costello v. Capital Cities Communications, Inc.* (1988), 125 Ill. 2d 402, 414, 532 N.E.2d 790.) Even if a statement is defamatory *per se*, it is not actionable if it is reasonably capable of an innocent construction. *Kolegas*, 154 Ill. 2d at 9-10.

In *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195, the Illinois Supreme Court modified the innocent construction rule from the earlier rule established in *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105. Both *John* and *Chapski* required that the statement be considered in context, giving the words and implications their natural and obvious meaning. (*Costello*, 125 Ill. 2d at 416; *Chapski*, 92 Ill. 2d at 352; *John*, 24 Ill. 2d at 442.) The difference, however, is that under *John*, words "that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (*John*, 24 Ill. 2d at 442.) Courts were required to interpret the words in their best possible sense. *Chapski*, 92 Ill. 2d at 349.

■ *Chapski* rejected that standard. Instead, an allegedly defamatory statement will not be regarded as defamatory *per se* if it can *reasonably* be innocently interpreted. (*Chapski*, 92 Ill. 2d at 349.) The supreme court explained that courts should not strain to find unnatural, but possible, innocent meanings of words where such a construction is unreasonable and a defamatory meaning is more reasonable. (*Chapski*, 92 Ill. 2d at 350-51.) In *Mittelman v. Witous* (1989), 135 Ill. 2d 220, 232, 552 N.E.2d 973, the supreme court reiterated that an innocent construction must be adopted if it is reasonable.

Whether a statement is capable of an innocent construction is a question of law. (*Kolegas*, 154 Ill. 2d at 11; *Chapski*, 92 Ill. 2d at 352.) In determining whether a statement is defamatory, the court must focus on the predictable effect the statement had on those who received the publication. *Colson v. Stieg* (1982), 89 Ill. 2d 205, 212, 433 N.E.2d 246; *Taradash v. Adelet/ Scott-Fetzer Co.* (1993), 260 Ill. App. 3d 313, 317.

Plaintiff argues that she properly alleged that Vanden Dorpel's statements imputed her inability to perform her job and prejudiced her in her profession. Moreover, plaintiff contends that the statements are not reasonably capable of innocent construction because the surrounding circumstances indicate that they were an attempt to

impute her inability to perform in her present job and prejudice her in an attempt to obtain future employment at the YMCA. In addressing the circumstances leading up to Vanden Dorpel's statements, plaintiff emphasizes her position and status at Northwestern, where her ability to follow up on assignments was critical to her position in charge of corporate relations and fundraising at Northwestern University. Thus, plaintiff stresses that any question regarding her ability to follow up on assignments clearly imputes her inability to do her job.

Furthermore, plaintiff maintains that the university's fundraising results clearly show that she did follow up on assignments. In 1988-89, corporations gave Northwestern $18.2 million, which was the largest amount ever received from corporations. In addition, all her employment reviews had been exemplary. Based on her past performance, plaintiff concludes that Vanden Dorpel made the statements knowing that they were false or with reckless disregard as to their falsity.

Moreover, plaintiff contends that the job descriptions at Northwestern and the YMCA were similar. In both positions, plaintiff was to seek outside contributions and donations from the corporate sector.

In response, defendants argue that Vanden Dorpel's statements are not defamatory *per se* because they are reasonably capable of the innocent construction that plaintiff simply did not fit in and was not compatible with her surroundings at Northwestern. Defendants maintain that the statements do not refer to plaintiff's ability to perform in a potential new job at the YMCA, but were limited to her employment at Northwestern. Regarding the alleged similarity between the two jobs, defendants argue that plaintiff alleged no facts regarding any similarity and that the two jobs were not in fact similar.

Defendants state that the established case law holds that statements regarding an employee's past performance in, and compatibility with, an employment position are subject to the innocent construction that the employees simply did not fit in or perform well in that particular position, and do not necessarily speak to the employee's ability to perform in other, future positions. In support of that position, defendants rely on *Valentine v. North American Co. for Life & Health Insurance* (1974), 60 Ill. 2d 168, 328 N.E.2d 265, and *Kakuris v. Klein* (1980), 88 Ill. App. 3d 597, 600, 410 N.E.2d 984. Both those cases are inapplicable because they were decided under the former rule of *John* (24 Ill. 2d 437, 181 N.E.2d 105), which has been modified by *Chapski* (92 Ill. 2d 344, 442 N.E.2d 195).

Defendants also rely on *Marczak v. Drexel National Bank* (1989),

186 Ill. App. 3d 640, 643, 542 N.E.2d 787, where the defendant bank officers stated that the plaintiff "did not perform up to the high standards expected of officers of the Bank" and "had some problems getting along with her supervisors and other officers." The court concluded that the statements were reasonably subject to the innocent construction because the bank was not saying that the plaintiff was a bad banker, but did not get along with other people in the bank and did not fit into the organization. *Marczak*, 186 Ill. App. 3d at 645.

Defendants also rely on *Powers v. Delnor Hospital* (1986), 148 Ill. App. 3d 844, 847, 499 N.E.2d 666, where the court held that statements were reasonably capable of the innocent construction that plaintiff had "personality conflicts" and did not get along with her co-workers. The plaintiff's supervisor stated that her continued employment was impossible due to her continuous dissatisfaction and the "friction and tension" created within her department because of her expressed attitudes and feelings. *Powers*, 148 Ill. App. 3d at 846.

The court concluded that the statements concerned the plaintiff's personality conflicts, not her abilities as a nurse. (*Powers*, 148 Ill. App. 3d at 847.) Therefore, they did not impute a lack of integrity or capacity to the plaintiff's relationship with her co-workers and did not pertain to her knowledge and ability to care for patients as a nurse. *Powers*, 148 Ill. App. 3d at 847.

Defendants also rely on *Heying v. Simonaitis* (1984), 126 Ill. App. 3d 157, 164-65, 466 N.E.2d 1137, where testimony by defendant physicians before a nurses' review committee was not actionable under the innocent construction rule. The physicians stated that personality conflicts with the plaintiff nurse had developed "to the extent where they were interfering with the work of the [medical] unit." (*Heying*, 126 Ill. App. 3d at 164.) After reviewing the context of the physicians' entire testimony before the nurse's review committee, the court concluded that neither physician impugned her ability as a nurse because they praised her as a very good nurse. *Heying*, 126 Ill. App. 3d at 164.

The cases on which defendants rely are distinguishable from this case. Although Vanden Dorpel's statement that plaintiff "could not get along with co-workers" was similar to the statements made in the cited cases, his statement that plaintiff "did not follow up on assignments" is very different.

■ Taking Vanden Dorpel's statements in context and giving them their natural meaning, his statement about plaintiff not getting along with co-workers could be considered innocent based on the innocent construction rule. However, the statement that plaintiff did

not follow up on assignments goes to the core of her position as director of corporate relations. Therefore, the trial court erred in finding that the statement that plaintiff did not follow up on assignments was not defamatory based on the innocent construction rule.

■ Even if defendant's statement was defamatory or interfered with plaintiff's prospective economic advantage, defendants argue that they have a qualified privilege in Vanden Dorpel's statements. The defamation and tortious interference counts are analytically intertwined. (See *Mittelman*, 135 Ill. 2d at 251.) A defamatory statement may give rise to a cause of action for libel and also become the means by which the tortious interference with prospective economic advantage is committed. (*Mittelman*, 135 Ill. 2d at 251.) Since the alleged defamatory statements were the basis for both claims, we consider qualified privilege for both together.

Defendants contend that plaintiff's complaint raised the conditional privilege of an employer to respond to an employment inquiry, but failed to allege facts showing that defendants acted with actual malice. Plaintiff responds that no conditional privilege attached to Vanden Dorpel's statements because he violated policies outlined in the handbook and made the statements knowing that they were false or in reckless disregard of their falsity.

■ A privileged communication is one that might be defamatory and actionable, but for the occasion on which or the circumstances under which it is made. (*Kuwik v. Starmark Star Marketing & Administration, Inc.* (1993), 156 Ill. 2d 16, 24, 619 N.E.2d 129.) Recently, in *Kuwik* (156 Ill. 2d at 27), the Illinois Supreme Court rejected earlier case law and adopted the approach taken by the Restatement (Second) of Torts in determining whether a conditional privilege exists. Under the Restatement (Second) of Torts, the court looks only to the occasion itself to determine as a matter of law and general policy whether the occasion created a recognized duty or interest that makes the communication privileged. *Kuwik*, 156 Ill. 2d at 27.

Defendant has the burden of proving whether a conditional privilege in an alleged defamation case exists. (*Kuwik*, 156 Ill. 2d at 27.) However, if defendant's conduct in an alleged tortious interference case is conditionally privileged, plaintiff has the burden of pleading in her *prima facie* case that defendant's conduct was unjustified or malicious. *Fellhauer*, 142 Ill. 2d at 512-13.

Illinois courts have not addressed whether an employer's statements in response to a prospective employer's inquiries may be conditionally privileged. However, the Seventh Circuit of the United

States Court of Appeals has held that an employer may invoke a conditional privilege to respond to direct inquiries by prospective employers. (*Delloma v. Consolidation Coal Co.* (7th Cir. 1993), 996 F.2d 168.) In addition, section 595, comment *i*, of the Restatement (Second) of Torts, provides that generally, a former employer who gives a negative reference to a prospective employer holds some qualified privilege against defamation suits. Restatement (Second) of Torts § 595, Comment *i*, at 273 (1977).

In addition, Illinois courts have recognized an interest of former employers in disclosing limited information to prospective employers. See *Roemer v. Zurich Insurance Co.* (1975), 25 Ill. App. 3d 606, 323 N.E.2d 582 (former supervisor had duty to respond in some manner to inquiries from placement agencies); *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 243 N.E.2d 217 (statements by former employer to a potential mortgagor were conditionally privileged).

Courts in Indiana and Wisconsin have also recognized the qualified privilege in employer reference cases. See *Chambers v. American Trans Air, Inc.* (Ind. App. 1991), 577 N.E.2d 612; *Zinda v. Louisiana Pacific Corp.* (1989), 149 Wis. 2d 913, 440 N.W.2d 548.

Even if a communication is conditionally privileged, the privilege can be abused. The Illinois Supreme Court expanded the definition of abuse of a qualified privilege that was stated in *Mittelman*. In accordance with *Kuwik*, once the defendant demonstrates that the occasion was conditionally privileged, the plaintiff must show a direct intention to injure another or a reckless disregard of the plaintiff's rights and of the consequences that may result to her. (*Kuwik*, 156 Ill. 2d at 30.) The court explained that "an abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Kuwik*, 156 Ill. 2d at 30.

■ We find that defendants may have abused their conditional privilege. The complaint alleges that plaintiff had received exemplary job performance reviews during her nine years of employment, that Vanden Dorpel knew that the university's handbook did not allow him to give employment information about plaintiff without her permission, and that Vanden Dorpel made false statements about plaintiff's work performance to Crown.

Vanden Dorpel's statements can be considered as a disregard for plaintiff's rights. Further proceedings may prove that Vanden Dorpel knew or should have known that it was improper under the university's policies to disclose any information about an employee over the telephone. Furthermore, plaintiff may be able to prove that Vanden

Dorpel should not have given information about her without first ascertaining whether she gave prior written authorization to do so. Thus, defendants may have abused any conditional privilege they had.

Based on the foregoing, we reverse the circuit court's judgments and remand this cause to the circuit court for further proceedings.

Reversed and remanded.

GREIMAN, P.J., and RIZZI, J., concur.