74 F.3d 1242
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Beverly B. MANN, Plaintiff-Appellant, Cross-Appellee,
v.
CITY OF CHICAGO, et al., Defendants-Appellees,
and
City of Chicago and James Montgomery, Cross-Appellants.
 Nos. 92-3761, 92-3797.
 United States Court of Appeals, Seventh Circuit.
 Argued March 30, 1995.
Decided Jan. 19, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied March
19, 1996.
 
 Before BAUER, RIPPLE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Beverly B. Mann filed suit against the City of Chicago, James Montgomery (formerly Chicago's Corporation Counsel), and Jayne Barnard and Timothy O'Hara (formerly of the Corporation Counsel's office) after she was terminated from her position as an Assistant Corporation Counsel in 1983. Her Third Amended Complaint asserted claims based on the First and Fourteenth Amendments to the Constitution of the United States, the consent decree entered in Shakman v. Democratic Organization of Cook County, and Illinois law; a supplemental complaint also alleged a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e. A number of Mann's claims were dismissed or disposed of on summary judgment. The case proceeded to trial in 1991 on the Shakman claim and Mann's state law claims for defamation, breach of contract, and tortious interference with a prospective economic advantage. The jury found in favor of Mann on the breach of contract claim (awarding damages of $68,285) and on her claim for tortious interference with the prospective economic advantage of continued employment with the City's Law Department (awarding damages of $74,700); but it found against her on her claims of defamation and tortious interference with the prospective economic advantage of alternative employment following her departure from the Law Department. The trial judge entered findings against Mann on the Shakman claim. Mann has appealed from the adverse disposition of a number of her claims; the City and Montgomery, in turn, have cross-appealed from the verdicts entered against them on the breach of contract and tortious interference claims. After considering all of the arguments raised by the parties, we have concluded that only two claims merit our discussion here: the defamation claim and the claim for tortious interference with the prospective economic advantage of Mann's continued employment with the Law Department. Based on our finding that the jury was erroneously instructed as to each of these claims, we vacate the verdicts rendered (against Mann on the defamation claim, for her on the tortious interference claim) and remand for a new trial on those claims alone; the judgment below is affirmed in all other respects.
 
 I. THE DEFAMATION INSTRUCTION
 
 2
 In Count VIII of her Third Amended Complaint, Mann alleged that Barnard and O'Hara had defamed Mann by making false statements about her job performance and competence as an attorney to her superiors within the Law Department; Mann also alleged that Barnard made additional defamatory statements to prospective employers outside the Law Department. The parties agree that because Barnard and O'Hara made any such statements in fulfillment of their duties as employees of the City, they enjoyed a qualified privilege and can only be held liable if Mann proved that the defendants made a defamatory statement or statements with actual malice. See Krasinski v. United Parcel Serv., Inc., 530 N.E.2d 468, 471 (Ill.1988); Anderson v. Vanden Dorpel, 645 N.E.2d 250, 258-59 (Ill.App.1994), appeal allowed, 652 N.E.2d 338 (1995); Davis v. John Crane, Inc., 633 N.E.2d 929, 937-38 (Ill.App.1994); Muthuswamy v. Burke, 646 N.E.2d 616, 620 (Ill.App.1993). At issue here is an instruction concerning the malice element of the defamation claim. With the parties' agreement, the district court advised the jury that a statement is made with actual malice if "the defendant made the statement despite knowing that it was false or despite a high degree of awareness of its probable falsity or entertaining serious doubts as to its truth." R. 406. However, over Mann's objection, the court went on to instruct the jury that "[a] defendant's mere failure to conduct a proper investigation into the truth of a statement before making it to another does not constitute the actual malice required for plaintiff to prevail on her defamation claim." Id. (Defendant's Proposed Instruction 4-B.) Mann argues that the additional instruction conflicted with the court's explanation of actual malice and erroneously suggested to the jury that a defendant might not act with actual malice if he makes a statement without first investigating its veracity, even if he entertains serious doubts on that subject. We agree.
 
 
 3
 It is, in one sense, correct to say that the failure to investigate the truth of a statement does not, in and of itself, establish a defendant's actual malice in making the statement. St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325 (1968); Troman v. Wood, 340 N.E.2d 292, 295 (Ill.1975); Jones v. Britt Airways, Inc., 622 F.Supp. 389, 393 (N.D.Ill.1985); Fopay v. Noveroske, 334 N.E.2d 79, 88 (Ill.App.1975); Bloomfield v. Retail Credit Co., 302 N.E.2d 88, 96 (Ill.App.1973); see also Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center, 484 N.E.2d 841, 844 (Ill.App.1985). But this is merely another way of emphasizing that when a defamatory statement is qualifiedly privileged, ordinary negligence will not suffice to establish liability; at a minimum, the plaintiff will have to show that the defendant acted with reckless disregard of its truth. Durso v. Lyle Stuart, Inc., 337 N.E.2d 443, 446 (Ill.App.1975); Bloomfield, 302 N.E.2d at 95.
 
 
 4
 [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.
 
 
 5
 St. Amant, 390 U.S. at 731, 88 S.Ct. at 1325. Thus, when the cases reiterate that the failure to investigate is not alone enough to establish actual malice, they mean simply that additional proof concerning the defendant's mental state is required. A defendant who repeats information without first checking into its accuracy is not reckless so long as he harbors no serious doubts on that score; on the other hand, a defendant who has serious reservations as to the veracity of the information may well be reckless if he repeats the information without investigating. Fopay, 334 N.E.2d at 88-90. The failure to investigate thus remains "a very important consideration" in assessing the defendant's culpability. Fopay, 334 N.E.2d at 90.
 
 
 6
 The instruction which the district court gave here is misleading in the sense that it suggests that the element of actual malice requires the defendant to have done, or omitted to do, more than simply failing to look into the truth of the statement he made. In fact, so long as the defendant doubted the veracity of the statement, his failure to investigate may well be enough to establish liability. One who suspects that a statement is inaccurate but decides to make it anyway without attempting to establish its truth evinces an indifference that amounts to actual malice. The instruction was misleading in another, more fundamental sense as well. It focused the jury's attention upon a single circumstance which, albeit highly relevant, ultimately is collateral to the central question in a defamation case--the defendant's regard for the accuracy of the complained of statement. For just this reason, the Illinois Supreme Court in Reed v. Northwestern Pub. Co., 530 N.E.2d 474, 487 (Ill.1988), cert. denied, 489 U.S. 1067, 109 S.Ct. 1344 (1989), upheld the trial court's refusal to give an instruction which advised the jury that it could infer actual malice from a "grossly inadequate" investigation, emphasizing the court's history of disapproving jury instructions which give "undue prominence" to particular facts. The instruction should likewise have been refused here.
 
 
 7
 The balance of the instructions given upon defamation did nothing to correct the misguided focus that the "mere failure to investigate" instruction gave the jury. We must therefore conclude that the jury deliberated with an incorrect impression of the law and that Mann was prejudiced by the mistaken instruction. See generally DePaepe v. General Motors Corp., 33 F.3d 737, 743-44 (7th Cir.1994). Mann is therefore entitled to a new trial on her defamation claim.
 
 
 8
 II. TORTIOUS INTERFERENCE WITH THE PROSPECTIVE ECONOMIC
 
 
 9
 ADVANTAGE OF CONTINUED EMPLOYMENT WITH LAW DEPARTMENT
 
 
 10
 In Count XI of her Third Amended Complaint, Mann alleged that Montgomery, O'Hara, and Barnard had all wrongfully interfered with her expectation of continued employment with the city's Law Department. The jury found in favor of O'Hara and Barnard on this claim, but against Montgomery. Montgomery contends that the verdict may have been the product of an erroneous jury instruction that advised the jury that the defendants acted with the requisite "actual malice" in interfering with Mann's prospective economic advantage if the jury found that they acted "with the intent and purpose to injure the plaintiff" or they acted "without justification." R. 406. Montgomery argues that "without justification" has a very specific meaning in the context of an at-will employment relationship like the one Mann had with the city; and because the district court failed to apprise the jury of what "without justification" meant, Montgomery reasons, the jury may have been misled as to what proof would be adequate to meet this element of the tortious interference claim. Again, we agree.
 
 
 11
 As an at-will employee of the city, Mann could be terminated for any reason or for no reason at all. Zimmerman v. Buchheit of Sparta, Inc., 645 N.E.2d 877, 879 (Ill.1994) (plurality); Hartlein v. Illinois Power Co., 601 N.E.2d 720, 728 (Ill.1992); Fellhauer v. City of Geneva, 568 N.E.2d 870, 875 (Ill.1991). Although an at-will employee thus has no enforceable contractual right to continued employment, the Illinois courts have recognized a cause of action for tortious interference with an at-will employee's legitimate expectation of continued employment. E.g., Fellhauer, 568 N.E.2d at 878-79. Montgomery, O'Hara, and Barnard, of course, were not outsiders intermeddling with the relations between Mann and her employer; they were supervisory employees with a duty to oversee and evaluate the work of Mann and other attorneys. See id. As such, they enjoyed a qualified privilege to exercise their professional judgment and act in good faith on the city's behalf. See id.; Mittelman v. Witous, 552 N.E.2d 973, 987 (Ill.1989). Thus, only if the defendants acted in a fashion Illinois courts describe as "without justification or maliciously" may they be held liable for tortiously interfering with Mann's expectation of continued employment with the city. Id. at 987; Fellhauer, 568 N.E.2d at 878; Swager v. Couri, 395 N.E.2d 921, 927 (Ill.1979); H.F. Philipsborn & Co. v. Suson, 322 N.E.2d 45, 50 (Ill.1974).
 
 
 12
 Although Illinois courts have never expressly articulated a definition of "without justification" in this context, it is quite clear that they have never employed those words in their ordinary sense--i.e., as the equivalent of "unjustly" or "for no valid reason." Instead, consistent with the nature of a defendant's qualified privilege--that is, to act in good faith for the benefit of his employer--the courts have described tortious conduct to fall principally into two categories: (1) behavior intended solely to harm the plaintiff; and (2) behavior that is undertaken solely for the defendant's interest, and not that of his employer. The first of these categories is, quite obviously, what the courts are referring to when they speak of "malicious" behavior or "actual malice". See, e.g., MGD, Inc. v. Dalen Trading Co., 596 N.E.2d 15, 18 (Ill.App.1992) (" '[a]ctual malice' is a positive desire or intent to injure another"). The second category is what has been described as conduct undertaken "without justification," and it thus becomes apparent that something unique is meant by those words. In case after case, courts have described this realm of conduct not to include behavior that is irrational, unexplained, or unjust, but actions taken solely for the defendant's own gain and contrary to the best interests of the employer. See, e.g., Fellhauer, 568 N.E.2d at 878-79; Mittelman, 552 N.E.2d at 987; Girsberger v. Kresz, 633 N.E.2d 781, 790 (Ill.App.1993); see also George A. Fuller Co. v. Chicago College of Osteopathic Medicine, 719 F.2d 1326, 1333 (7th Cir.1983); Cromley v. Board of Educ. of Lockport Township High School Dist. 205, 699 F.Supp. 1283, 1299 (N.D.Ill.1988); Vassardakis v. Parish, 36 F.Supp. 1002, 1005 (S.D.N.Y.1941). It would be illogical to define the range of culpable conduct otherwise--at will employment, after all, implies that it is the employer's prerogative to discharge an employee whether a jury might think it fair or not.
 
 
 13
 Despite the distinct meaning "without justification" has in this context, the district court failed to define the term for the jury. With no other meaning to ascribe to the phrase, the jury could only have interpreted the phrase to mean "unfairly." It thus might have found Montgomery liable for tortiously interfering with Mann's expectation of continued employment with the Law Department if it believed Montgomery acted out of malice or without a reason the jury believed was just. That is plainly a far broader standard than articulated for the tort, and patently inconsistent with Mann's status as an at-will employee. Thus, we are compelled to conclude that the jury was not properly instructed as to the legal standards governing this claim and that Montgomery was prejudiced by the mistake. Montgomery is therefore entitled to a new trial.
 
 III. CONCLUSION
 
 14
 For the reasons we have given, we vacate the verdicts rendered in favor of Barnard and O'Hara and against Mann on Count VIII of the Third Amended Complaint and in favor of Mann and against Montgomery on Count XI of the Third Amended Complaint, and we remand for a new trial on those claims alone. The judgment below is affirmed in all other respects. The parties shall bear their own costs on appeal.
 
 
 15
 AFFIRMED IN PART, VACATED IN PART, and REMANDED.