DANIEL HALPERN *et al.*, Plaintiffs-Appellants, *v.* NEWS-SUN BROADCASTING COMPANY, INC., *et al.*, Defendants-Appellees.

Second District   No. 76-117

Opinion filed October 14, 1977.—Rehearing denied November 14, 1977.

Paul M. Heller, of Wexler, Wexler & Heller, of Chicago, for appellants.

Murray R. Conzelman, of Conzelman, Schultz & Snarski, of Waukegan, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

Plaintiffs, the Pavilion of Highland Park, Inc., a corporation, and Daniel Halpern, the director, president and chief operating officer of said corporation, sued the News-Sun Broadcasting Company, Inc., the News-Sun and Steve Rothman, a reporter for the News-Sun, for allegedly libelous statements published during the period from October 1974 to and including February 1975, more explicitly set forth hereafter. On motion of the defendants, the circuit court of Lake County dismissed the amended complaint for failure to state a cause of action. The plaintiffs have appealed, contending that the amended complaint set forth sufficient factual allegations to sustain a cause of action for libel.

The plaintiffs admit that they are "public officials" within the meaning of *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710. In its order dismissing the complaint the trial court so found but held that the same "fails to state a cause of action in that it fails to allege actual malice or special damage."

One of the other grounds which defendants raised in their motion to dismiss the amended complaint was that the alleged libelous words were capable of an innocent construction. The order of the trial court dismissing the amended complaint makes no reference to this ground, apparently because the court found other grounds upon which to predicate the dismissal. Defendants have taken the position on this appeal that the complaint was properly dismissed on this ground as well as those set forth in the trial court's order. Because we deem this question dispositive of the major portion of the case before us, we will deal with it first.

The factual background giving rise to this libel action is as follows. The corporate plaintiff operates a nursing home. On August 20, 1974, 13 patients of the home became ill and Richard Hall, a mentally retarded patient, died. On October 1, 1974, a report of the incident was made to the Lake County Department of Health by Mrs. Josephine Schabowicz, an institutional nurse consultant. Following that meeting defendants published a series of articles concerning the incident which plaintiffs interpret as accusing them of a crime or being guilty of misconduct in the operation of the nursing home and improperly prejudicing them in their business or profession. In pertinent part paragraph 10 of the complaint alleges that defendants published the following allegedly false statements:

"10.

* * *

(a) On October 2, 1974 in an article entitled 'Child's Death Sparks Curbs of Nursing Home' the Defendants having actual knowledge that Mrs. Schabowicz did not know the cause of Richard Hall's death, wrote and published the following quote:

'She said the hamburger and turkey had not been stored properly and this may have caused the development of gaseous gangrene, the ailment which caused the patient's death.'

'She explained the illness could have been prevented if the food had been heated sufficiently to kill the virus.'

'All residents were extremely ill, but the home didn't call for help from the health department until 4 p.m. the following day after one patient died.'

(b) On December 11, 1974, in an article entitled 'Autopsy Rules Out Food Poisoning' the Defendants, who had actual knowledge of the contents of the Coroner's autopsy report, and knew that said reported [*sic*] indicated death caused by pneumonia and colitis, wrote and published the following false statement:

'The death of a mentally retarded patient in a Highwood nursing home was the result of pneumonia and *malnutrition* and not food poisoning as the death certificate indicated. (Emphasis added)'

That the Defendants continued to cite malnutrition as the cause of death in subsequent articles dated December 12, 1974, January 9, 14, 24, 1975 and February 11, 1975.

(c) That on January 10, 1975, in an article entitled 'State May Quit Licensing Two Area Nursing Homes', the Defendants who had seen and viewed certain records which the Plaintiffs had released to the Coroner's office and who had actual knowledge that Richard Hall had received only 2.5 milligrams of lonotil [*sic*] prior to his death, gave false information to Dr. Robert Mendelsohn, when during an interview they informed said doctor that Richard Hall had received 25 milligrams of said drug; thereby eliciting the following:

'I think it would be a very good idea for Lind [the coroner] to investigate whether the boy's death was drug-induced.'

'Lomotil . . . can kill a patient,' he said maintaining that a doctor should not (as the youth's doctor did) prescribe 25 miligrams of lomotil for a patient weighing about 50 pounds. 'That is five times the recommended dosage for a patient of that size.'

(d) That during the series of articles as aforementioned, Defendants having actual knowledge that Plaintiffs had custody

and control of only seven mentally retarded children continually misstated the number of said patients and did in an article dated October 10, 1974, claim:

> '37 mentally retarded patients housed at the facility at the time of the incident.' "

■■ ■ The innocent construction rule requires that the allegedly libelous articles be read as a whole and that the words used therein be given their natural and obvious meanings. If the allegedly libelous words are capable of being read innocently they must be so read and declared nonactionable as a matter of law. (*Valentine v. North American Co. for Life & Health Insurance* (1974), 60 Ill. 2d 168, 328 N.E.2d 265; *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105; *Krass v. Froio* (1975), 24 Ill. App. 3d 924, 322 N.E.2d 67.) In seeking to apply this rule, however, we immediately run into the difficulty that plaintiffs neither set forth the entire contents of the allegedly libelous articles nor attached them as exhibits to the complaint. The record before us includes only those portions of the articles set forth above and our review thereof is correspondingly limited. We cannot assume that the missing portions of the allegedly libelous articles in any way enhance the charges set forth in the quoted portions of the articles.

■■ We turn first to paragraph 10(a) of the complaint dealing with the article which appeared on October 2, 1974. This article may be fairly characterized as stating that improper storage of meat at the home may have eventually resulted in the patient's death. In addition to improper storage of foods, the article charges, at least indirectly, that the food was improperly cooked. The average reader thereof would be lead to believe that the agents or employees of the home had been negligent in the performance of their duties with regard to food storage and preparation. We believe that such a charge, if false, would adversely affect the corporate plaintiff herein and prejudice it in its business of operating a nursing home.

It does not follow, however, that just because the corporate plaintiff is prejudiced in its business that the individual plaintiff herein is necessarily similarly prejudiced. As noted previously, the individual plaintiff is the director, president and chief operating officer of the corporate plaintiff. The complaint does not set forth any further facts concerning the individual plaintiff's duties in his various capacities or his connection with food storage and preparation. In view of the administrative and executive positions which the individual plaintiff holds, it is highly unlikely that he himself improperly stored or improperly prepared the meat. In his capacity as chief operating officer it is possible that he had control over hiring the employees or agents of the home who did have duties directly connected with the preparation and storage of foods. The article,

however, does not charge that the home hired unqualified employees or that this was a repeated occurrence of which the management would surely be expected to take note and attempt to correct. Thus, although the article in question can clearly be interpreted as charging negligence on the part of at least one employee of the home, we do not believe that it charges negligent or incompetent administration of the home itself. Even the statement that the home did not call for help from the health department until the following day does not necessarily impute any improper actions on the part of the administrators of the home. The statement is perfectly consistent with a state of facts wherein the administrators of the nursing home provided the stricken patients with proper medical attention. It would appear to be proper procedure to seek medical help by calling a physician or physicians without first calling the health department. Thus, we believe that under the innocent construction rule, there is nothing in the October 2, 1974, article which can reasonably be construed to be libelous of the individual plaintiff herein.

■■ We next turn to the December 11, 1974, article which dealt with the cause of death of the mentally retarded patient. Plaintiffs contend that this article charges them with the crime of falsifying the death certificate. We cannot agree. First, we must note that there is nothing in this complaint which alleges that plaintiffs were in any way connected with the preparation of the death certificate in question. Moreover, we note that the crime to which plaintiffs are apparently referring, requires that the false statements be made wilfully and knowingly. (Ill. Rev. Stat. 1973, ch. 111½, par. 73-27(1)(a).) The article as published, may reasonably be interpreted to mean that the death certificate was erroneous. This error however, could easily be the result of a simple mistake and need not necessarily have been deliberately made. We therefore conclude that the December 11, 1974, article is susceptible of an innocent construction and is not libelous of either plaintiff herein.

■■ The January 10, 1975, article referred to in paragraph 10(c) of the amended complaint dealt with the possibility of whether the patient's death was the result of an overdose of lomotil. The allegedly libelous phrase herein is that the patient's doctor prescribed approximately five times the recommended dosage of the drug. We agree with defendants that if anyone were libelled by this statement it was the doctor. There is nothing, however, in this statement which connects either plaintiff to the doctor. The individual plaintiff does not allege that he was the doctor and the nursing home has not alleged that the doctor was its employee or agent in the amended complaint. While it would be possible for the home to employ a full-time doctor, it is equally possible for the home to utilize individual doctors in treating given patients. It is even possible that a particular patient might have his own physician not in any way connected

with the nursing home. The January 10, 1975, article, therefore, is susceptible of an innocent construction as to the two named plaintiffs herein.

■■■ Finally, the October 10, 1974, article referred to in paragraph 10(d) of the amended complaint allegedly misstated the number of mentally retarded patients at the nursing home. Initially we note that plaintiffs' brief filed herein makes no argument with regard to why this particular misstatement is libelous. We may, therefore, conclude that under Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(7)), plaintiffs have waived any contention that this paragraph properly states a cause of action for libel. (*Prather v. Lockwood* (1974), 19 Ill. App. 3d 146, 310 N.E.2d 815.) Having considered the matter, however, we find absolutely nothing libelous in a mere overstatement of the number of patients at a given nursing home. There is nothing in the quoted statement which implies that this is more patients than the home could reasonably care for. The alleged misstatement does not charge misconduct on the part of anyone and, therefore, is not libelous of anyone, including the two plaintiffs herein.

For the foregoing reasons the trial court properly dismissed the complaint as to plaintiff Daniel Halpern in all regards. None of the allegedly libelous statements, when viewed under the innocent construction rule, are libelous of Mr. Halpern. As to the corporate plaintiff herein, the trial court properly dismissed the complaint insofar as the allegations of paragraph 10(b), (c) and (d) are concerned. Paragraph 10(a) is not capable of an innocent construction as to the corporate plaintiff and, if properly dismissed at all, must have been dismissed on some other ground.

We therefore turn to the question of whether the amended complaint sufficiently alleged actual malice. The oft-quoted and leading case upon this question is, of course, *New York Times Co. v. Sullivan.* The rule in *New York Times* has been stated many times, and is, that the article in question must be published by the newspaper with actual malice, that is, with knowledge that it was false or with a reckless disregard of whether it was false or not. There are numerous cases determining whether the various complaints at issue did, in fact, set forth as a fact that the newspaper article in question was published with knowledge that it was false or with a reckless disregard of its truth or falsity. The defendants herein rely primarily upon *Doctors Convalescent Center, Inc. v. East Shore Newspapers, Inc.* (1968), 104 Ill. App. 2d 271, 244 N.E.2d 373. In that case the sole question presented was the sufficiency of the complaint and the majority of the court held that the complaint failed to allege sufficient facts showing actual malice as required by *New York Times.* Because of the factual similarity between that case and the instant case,

we have examined it and the cases upon which it relies very carefully. We are convinced that the similarity between the two cases is limited to the underlying factual situation and does not extend to the method of pleading facts employed by the respective plaintiffs. Rather, we believe the pleadings herein are more similar to those at issue in *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 266, 239 N.E.2d 837, 841-42, about which the supreme court said:

> "The amended complaint did considerably more than repeat the epithet of 'actual malice'. As previously noted, it charged that 'the defendants, and each of them, intending to injure the plaintiff's good name and to injure him in his livelihood, with knowledge that it was false and with reckless disregard to whether it was false or not, maliciously composed, published and caused to be published in their said newspaper, an article containing false, scandalous and malicious libels concerning the Plaintiff.' It also incorporated by reference the article in question which on its face, gives rise to factual inferences tending to support the charge of actual malice."

■■ In the case before us the corporate plaintiff has set forth in some detail the facts supporting its allegation in paragraph 10(a) of the amended complaint that defendants published the false information with actual knowledge of its falsity. It is specifically alleged that the individual defendant, Rothman, an employee of the newspaper, was present at the Lake County Department of Health meeting at which Mrs. Schabowicz allegedly made the statements published by defendants. Whether or not the corporate plaintiff will be able to prove these allegations at a later date is, of course, a matter of some conjecture. Nevertheless, paragraph 10(a) of the amended complaint does sufficiently allege actual malice and a factual basis therefor and the trial court erred in dismissing the amended complaint upon this basis.

We turn next to the issue of whether the corporate plaintiff was required to allege special damages and if so whether it sufficiently did so. It is well established in Illinois that there are several categories of defamatory words which constitute libel per se, and if the words fall within one of these categories special damages need not be alleged. One of these categories is words prejudicing a party in its profession or trade. (*Whitby v. Associates Discount Corp.* (1965), 59 Ill. App. 2d 337, 207 N.E.2d 482; *Kirk v. Village of Hillcrest* (1975), 31 Ill. App. 3d 1063, 335 N.E.2d 535.) As we have previously noted in this opinion, the publication of the words referred to in paragraph 10(a) of the amended complaint falls within this category.

■■ Defendants have taken the position upon this appeal, however, that the law in this area has undergone a substantial change and that "since

*New York Times v. Sullivan* there is no such thing as libel per se for a public official." In support of this argument, defendants have cited to us a number of Illinois cases which seem to contain statements to the effect that allegations of special damages are required in cases such as the one before us. Our research has convinced us, however, that all of these statements may be traced to the statement of this court appearing in *Lundstrom v. Winnebago Newspapers, Inc.* (1965), 58 Ill. App. 2d 33, 36, 206 N.E.2d 525, 527, that:

> "In view of the rule announced in New York Times Co. v. Sullivan, supra, the complaint does not state a good cause of action unless it alleges actual malice and consequent special damages."

The holding in *Lundstrom* appears to be that failure to allege special damages was a fatal flaw justifying granting the motion for summary judgment. A close examination of the opinion in *Lundstrom*, however, reveals that the court also said:

> "The complaint alleges in general terms that the defendants were motivated by malice but we are given no facts from which to draw this conclusion." (58 Ill. App. 2d 33, 36, 206 N.E.2d 525, 527.)

It is clear that such a failure to allege facts supporting a charge of malice is fatal to a complaint. (*Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 551-52, 229 N.E.2d 514, 518.) Thus, *Lundstrom* was rightly decided even if that portion of the opinion dealing with special damages was erroneous.

More recent decisions in the area of libel law have made it clear that the statements appearing in *Lundstrom* were probably an over-broad interpretation of *New York Times*. (See *Weber v. Woods* (1975), 31 Ill. App. 3d 122, 127-30, 334 N.E.2d 857, 860-62.) The most important pronouncement of the United States Supreme Court with regard to the general subject of damages recoverable in libel cases is *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997. That case, of course, dealt with damages recoverable in an action by a private individual as opposed to a public official. The Supreme Court stated, in part:

> "* * * we hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." (418 U.S. 323, 349, 41 L. Ed. 2d 789, 810, 94 S. Ct. 2997, 3011.)

The Supreme Court also made it clear that defamation plaintiffs who do not prove actual malice in the *New York Times* sense were to be restricted to recovery for "actual injuries" and noted that such injuries need not necessarily be limited to out-of-pocket losses but could include

such customary damages as impairment of reputation in the community, personal humiliation and mental anguish so long as all awards were supported by competent evidence concerning the injury. In another case involving a private individual, our supreme court has interpreted *Gertz* to mean,

> "Recovery must be limited to compensation for actual injury suffered * * * Only if liability was predicated on actual malice could punitive damages be awarded or actual damages be presumed." *Troman v. Wood* (1975), 62 Ill. 2d 184, 192, 340 N.E.2d 292, 296.

■■ One of the leading cases in the area of libel of a public official decided since *Gertz* is *Carson v. Allied News Co.* (7th Cir. 1976), 529 F.2d 206. In that case the district court had granted a motion for summary judgment based in part upon plaintiff's failure to allege special damages. In discussing this matter, the Seventh Circuit said:

> "The fairly clear implication [of *Gertz*] is that where actual malice as defined in *New York Times* is shown, presumed and punitive damages are recoverable if the applicable state law permits such damages, and hence special damages need not be shown." (529 F.2d 206, 214.)

In one of the footnotes the Seventh Circuit made it clear that it interpreted Illinois law to be consistent with the rule that special damages need not be shown in cases involving libel per se. We believe that this is still the proper interpretation of Illinois law and thus conclude that the corporate plaintiff herein was not required to allege special damages.

■■ Even if we are wrong in our conclusion that there is no requirement that the corporate plaintiff in the instant circumstances allege special damages, we do not believe that the complaint herein can be properly dismissed for failure to include such allegations. We note that in part the corporation has pled that it has lost income and continues to lose income as a result of patients leaving the home and other patients removing their applications. We believe that this constitutes a proper allegation of special damages. *Cf. Windsor Lake, Inc. v. WROK* (1968), 94 Ill. App. 2d 403, 236 N.E.2d 913.

■■ We have examined the motion to dismiss filed herein and have concluded that the only other ground raised which might support the dismissal of the amended complaint is that the publications herein were privileged as a matter of law. We assume this claim of privilege is with reference to the qualified or conditional privilege to report governmental proceedings. (*Lulay v. Peoria Journal-Star, Inc.* (1966), 34 Ill. 2d 112, 214 N.E.2d 746.) The privilege is, of course, conditional upon the fact that it is an accurate report of the proceedings and not made solely for the purpose

of harming the individual defamed thereby. The essence of the corporate plaintiff's complaint herein is that the given publication was not an accurate report of the proceedings had before the Lake County Department of Health and further that the report was published knowing that it was not accurate. In the posture in which this case reaches us we, of course, have no way of knowing what the ultimate evidence herein may show. The amended complaint does, however, contain a sufficient allegation of actual malice to negate the conditional privilege appearing on the face of the complaint. *Coffey v. MacKay* (1972), 2 Ill. App. 3d 802, 808-09, 277 N.E.2d 748, 752-53.

For the foregoing reasons the order of the trial court dismissing the amended complaint is affirmed in all respects as to plaintiff Halpern. With regard to the corporate plaintiff herein, the order of the trial court is affirmed insofar as it dismisses the allegations contained in paragraph 10(b), (c) and (d) of the amended complaint. The judgment of the trial court is reversed as to paragraph 10(a) of the amended complaint and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded with instructions.

RECHENMACHER, P. J., and BOYLE, J., concur.