THOMAS QUINN, Plaintiff-Appellant, v. JEWEL FOOD STORES, INC.,
Defendant-Appellee.

First District (5th Division)   No. 1—93—2991

Opinion filed November 22, 1995.

David Krane, of Lisle (John Valas, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael A. Pollard, Donald J. Hayden, and B. Scott Douglass, of counsel), for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

On April 30, 1992, the plaintiff, Thomas Quinn, filed a three-count complaint against his former employer, Jewel Food Stores, Inc. (Jewel), for defamation, interference with prospective advantage, and conspiracy. Defendant filed a motion to dismiss which the court granted, and plaintiff was given leave to amend his complaint. In his amended complaint, plaintiff alleged defamation *per se*, defamation *per quod*, and interference with prospective advantage. Defendant filed another motion to dismiss. The court dismissed the defamation claims with prejudice and gave plaintiff leave to amend his interference with prospective advantage claim. On appeal, plaintiff contends the trial court erred in dismissing the defamation claims because: (1) defendant's statements were actionable defamation and (2) defendant's statements were not privileged.

BACKGROUND

Plaintiff Thomas Quinn (Quinn) was an employee of Jewel from 1969 to 1985. Prior to April 20, 1978, Quinn participated in a management training program sponsored by Jewel. On April 20, 1978, Jewel's agent interviewed Quinn regarding a management position at Jewel. The object of this interview was to evaluate Quinn's suitability for a position within the Jewel management company. The agent recorded his impressions of plaintiff in a memorandum to Jewel management. The memorandum included an evaluation form which rated Quinn in the categories of "appearance," "personality," "intelligence," "maturity," "stability," "leadership," "willingness to work," "drive-will to succeed," "attitude toward retailing," and "overall rating of applicant." The form's rating system ranged from "outstanding" to "marginal." Quinn received an overall rating of "good." In the evaluation form's comment section, the agent indicated under "strong points" that plaintiff was "very aggressive, to the point of being cocky . . . could be a problem!" Under "weak points," the agent stated: "A con artist! Watch out for the bullshit!" Under the recommendation section, the agent noted that overall "[Quinn] could be dynamite IF he performs as he acts and talks...HIRE, but let him prove his own program." Although Jewel denied Quinn a management position, Quinn continued to work for Jewel until 1985.

After leaving Jewel, Quinn sought to secure a franchise with Southland Corporation (7-Eleven) and White Hen Pantry convenience

stores. On or about September of 1991, Jewel released Quinn's personnel file to Southland Corporation and White Hen Pantry. Quinn authorized the release of this file; however, he was not aware of the comments contained in the evaluation. Southland Corporation and White Hen Pantry denied Quinn franchises with their convenience stores.

On April 30, 1992, Quinn filed a three-count complaint against Jewel which alleged that Jewel had defamed him, tortiously interfered with his ability to obtain a franchise, and conspired against plaintiff in preventing him from obtaining a franchise. Jewel filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)), arguing that the evaluation comments were neither defamatory *per se* nor defamatory *per quod*, and that the publication of the interview evaluation form at Quinn's request was protected by a qualified privilege. The court granted Jewel's motion to dismiss but allowed Quinn leave to file an amended complaint.

On February 16, 1993, Quinn filed an amended complaint which alleged defamation *per se*, defamation *per quod*, and tortious interference with a prospective economic advantage. Jewel filed another motion to dismiss based on the same argument as the first motion to dismiss and additionally argued that the agent's evaluative comments were protected opinion. The court again dismissed Quinn's defamation claims, finding that the evaluation was neither defamatory *per se* nor defamation *per quod*, the statements were privileged, and the speech used in the defamation counts did not bar the plaintiff from obtaining the franchise. Plaintiff appealed.

We affirm.

OPINION

I

■ In ruling on a section 2—615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom. (*Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 499, 568 N.E.2d 870.) The question presented by a motion to dismiss a complaint for failure to state a cause of action is whether sufficient facts are contained in the pleadings which, if established, could entitle the plaintiff to relief. (*Heerey v. Berke* (1989), 188 Ill. App. 3d 527, 530, 544 N.E.2d 1037.) In making this determination, the court is to interpret the allegations of the complaint in the light most favorable to the plaintiff. *Kolegas v. Heftel Broadcasting Corp.* (1992), 154 Ill. 2d 1, 9, 607 N.E.2d 201.

■ With these general principles in mind, we must first decide whether defendant's statements were actionable defamation against plaintiff. A statement is defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with her. (*Kolegas*, 154 Ill. 2d at 10.) While words may be considered defamatory, they are not actionable if they are constitutionally protected expressions of opinion. (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 229, 552 N.E.2d 973.) Because the distinction between opinion and fact is a matter of law (*Ollman v. Evans* (D.C. Cir. 1984), 750 F.2d 970, 978), we are faced with the task of "accommodating the First Amendment's protection of free expression of ideas with the common law's protection of an individual's interest in reputation." *Ollman v. Evans*, 750 F.2d at 974.

■ The protection of opinion from defamation actions finds its roots in *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 339, 41 L. Ed. 2d 789, 805, 94 S. Ct. 2997, 3006-07. In *Gertz*, the Court stated in *dicta*:

> "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact." (418 U.S. at 339-40, 41 L. Ed. 2d at 805, 94 S. Ct. at 3007.)

However, *Gertz* gave little guidance on how courts should discern the distinction between fact and opinion. Therefore, State and Federal courts have wrestled with determining methods to differentiate constitutionally protected opinions from statements of fact. For example, in *Ollman*, the court developed its own test to determine whether under the totality of the circumstances, the average reader would view the statement as fact or, conversely, opinion. The court used four factors: (1) whether the statement has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous; (2) whether the statement is verifiable, *i.e.*, capable of being objectively characterized as true or false; (3) whether the literary context of the statement would influence the average reader's readiness to infer that a particular statement has factual content; and (4) whether the broader social context or setting in which the statement appears signals a usage as either fact or opinion. The court stated that while these factors are necessarily imperfect, they can assist in determining what constitutes an assertion of fact and what is opinion. *Ollman*, 750 F.2d at 979.

■ Also, in *Mittelman*, the Illinois Supreme Court relied on the distinctions made between fact and opinion in the Restatement (Second) of Torts § 558 (1977). The Restatement distinguishes between "pure opinion" and "mixed opinion." "Pure opinion" is an expression of opinion by which the maker of a comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character. If both parties to the communication know the facts or assume their existence, the maker of the comment need not himself express the alleged facts. (Restatement (Second) of Torts § 566, Comment *b*, at 171 (1977).) However, "mixed opinion" is an opinion in form or context that is apparently based upon facts which have not been stated by the defendant or assumed to exist by the parties to the communication. (Restatement (Second) of Torts § 566, Comment *b*, at 172 (1977).) The mixed expression of opinion may give rise to the inference that there are undisclosed facts that justify the opinion expressed. If so, it is actionable. (*Mittelman*, 135 Ill. 2d at 242.) The court recognized the factors in *Ollman* as "workable criteria for determining the existence of [an] undisclosed fact in a statement alleged to be defamatory"; however, the court adopted the *Ollman* test to supplement, rather than replace, the analytical framework of the Restatement. *Mittelman*, 135 Ill. 2d at 243-44.

In this case, plaintiff asserts that defendant's statements were mixed opinion and gave rise to the inference that there are undisclosed facts that justify the opinion expressed. Specifically, plaintiff argues that the memorandum was designed to assign values to certain characteristics and abilities of the plaintiff. Once the values were assigned to plaintiff as his characteristics and abilities, those values were statements of fact. Plaintiff further argues that the defamatory statements which occurred in the comment section of the evaluation form were not supported by facts. Plaintiff states these statements injured his reputation and deterred third persons from dealing with him. He relies on *Mittelman* to support his argument. We note that, in *Mittelman*, a supervising attorney blamed the plaintiff, an associate at the law firm, for a loss in revenues in connection to a suit because the plaintiff "sat" on information which would have saved the firm money. The court stated the statements were expressions of fact which were not constitutionally protected as opinions but were " 'inevitably hurtful' so that damage is presumed." *Mittelman*, 135 Ill. 2d at 247.

■ In our view, plaintiff's case is distinguishable from *Mittelman*. Unlike *Mittelman*, defendant's statements were not supported by any facts. The terms "cocky," "con artist" and "bullshit" do not express

statements of fact. Instead, they are characterizations and opinions formed based on the agent's interview with plaintiff.

Further, in considering the *Ollman* factors, it is clear the statements are opinions. First, the words can be interpreted loosely. For example, "cocky" and "con artist" are terms which have both negative and positive connotations. "Cocky" is defined as "self-assertive," "self-confident," "conceited." (Webster's II New Riverside University Dictionary 276 (1984).) "Con artist" is not defined in the dictionary; however, "con" is described as: "to defraud or swindle (a victim) by soliciting confidence (dupe)"; "to win over by benevolent persuasion" (they "conned" me into buying ice cream). (Webster's II New Riverside University Dictionary 293 (1984). See *Spelson v. CBS, Inc.* (N.D. Ill. 1984), 581 F. Supp. 1195, *aff'd* (7th Cir. 1985) 757 F.2d 1291 (where court held "cancer con-artists" was a rational conclusion gleaned from defendant's opinion).) "Bullshit" also has several meanings, such as "nonsense" or "to talk foolishly, boastfully or idly" and "to engage in a discursive discussion." Merriam-Webster's Collegiate Dictionary 237 (1993).

Second, these statements are also not objectively capable of proof or disproof. There are "no specific facts *** complete or incomplete, capable of being objectively verified as true or false." (*Piersall v. Sportsvision of Chicago* (1992), 230 Ill. App. 3d 503, 510-11, 595 N.E.2d 103.) Therefore, a reader could not rationally view the unverifiable statements as facts.

Third, in examining the evaluation as a whole, we believe that these statements are not "laden with factual content" and cannot be read to imply facts. Again, the evaluation includes no facts. We do not know what facts, if any, defendant considered in forming its opinion of plaintiff.

Fourth, we must consider the social context in which the alleged defamatory statements were made because some types of writing or speech by custom or convention signal to readers or listeners that what is being read or heard is likely to be opinion, not fact. (*Ollman*, 750 F.2d at 983.) In the social context of employment interviews, evaluations of an employee may include comments which communicate subjective opinions. In the context of plaintiff's evaluation, the alleged defamatory statements were opinions, not facts, of his capabilities. Considering the totality of the circumstances and the context in which the words were used, we hold these statements are constitutionally protected opinions.

■ Plaintiff argues, however, that defendant's statements were defamatory *per se* and cannot reasonably be innocently construed. Statements are considered defamation *per se* when the defamatory

character of the statement so obviously injures the plaintiff's good name or reputation that the plaintiff need not prove injury or damages. (*Kolegas*, 154 Ill. 2d at 9-10.) There are four recognized categories of statements that are considered defamatory *per se*: (1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business. (*Costello v. Capital Cities Communications, Inc.* (1988), 125 Ill. 2d 402, 414, 532 N.E.2d 790.) Plaintiff asserts his claim rests on the fourth category.

Even if a statement falls into one of these categories, however, it will not be found defamatory *per se* if it is reasonably capable of an innocent construction. The innocent construction rule requires courts to consider a written or oral statement in context, giving the words and implications therefrom their natural and obvious meaning. If so construed, a statement which "may reasonably be innocently interpreted" will not be regarded as defamatory *per se*. *Kolegas*, 154 Ill. 2d at 11, citing *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195; *Mittelman*, 135 Ill. 2d at 232.

Whether a statement of fact is capable of innocent construction is a matter of law. (*Kolegas*, 154 Ill. 2d at 11.) In determining whether a statement is defamatory, the court must focus on the predictable effect the statement had on those who received the publication. (*Anderson v. Vanden Dorpel* (1994), 268 Ill. App. 3d 907, 914, 645 N.E.2d 250; *Taradash v. Adelet/ Scott-Fetzer Co.* (1993), 260 Ill. App. 3d 313, 628 N.E.2d 884.) Plaintiff contends that defendant's statements describing plaintiff as a "con artist" who speaks "bullshit" and who is "cocky" indicated a problem with plaintiff's character and ability. Plaintiff relies on *Kumaran v. Brotman* (1993), 247 Ill. App. 3d 216, 617 N.E.2d 191. In *Kumaran*, the plaintiff filed a defamation suit against a newspaper, reporter and attorneys quoted in the newspaper. The article stated that the plaintiff was "working a scam" by filing numerous lawsuits to extract monetary settlements on a full-time basis. The court noted that one definition of "scam" is "to cheat or swindle, as in a confidence game." (*Kuraman*, 247 Ill. App. 3d at 225.) The court held this statement was defamation *per se* because it could impute that plaintiff had committed a crime, and also the statement could prejudice him in his profession or trade as a school teacher. *Kuraman*, 247 Ill. App. 3d at 227.

■ Plaintiff argues that the natural and obvious meaning of the statements "A con artist. Watch out for the bullshit!" was that

plaintiff was adept at dishonesty, conceited, deceitful, fraudulent, and an individual who is a swindler and tells lies. We disagree. We believe the terms "cocky," "con artist" and "bullshit" can be innocently construed within the context of the plaintiff's evaluation. As a matter of fact, the term "cocky" was used in the section designated for "strong points" and described the aggressive and ambitious nature of plaintiff, who received an "outstanding" rating for these characteristics.

The comments "A con artist! Watch out for the bullshit!" can also be innocently construed. Unlike the context in which "scam" was used in *Kumaran*, we do not believe that the term "con artist" was used to portray plaintiff as one who perpetrates "scams" or cheats and swindles others. Instead, we believe the term "con artist" was used to describe plaintiff as highly persuasive, which is also consistent with the description of plaintiff as aggressive. The statement "Watch out for the bullshit!" could reasonably mean that the plaintiff talks a lot and engages in puffery of himself. This interpretation is consistent with defendant's recommendation that "overall, [defendant] could be dynamite IF he performs as he acts and talks...HIRE, but let him prove his own program." (Emphasis in original.) We believe that these statements, in the context of the entire evaluation, can be reasonably construed as "imaginative expressions" or "rhetorical hyperbole" because the statements are obviously understood as exaggerations, rather than as statements of literal fact. (See *Kolegas*, 154 Ill. 2d at 12; *Kumaran*, 247 Ill. App. 3d at 228.) Furthermore, these statements do not indicate that plaintiff is incapable of performing duties necessary to manage a convenience store franchise. Therefore, we hold that defendant's statements were not defamatory *per se.*

In the alternative, plaintiff claims that defendant's statements were defamatory *per quod.* For defamatory *per quod* statements, extrinsic facts are required to explain their defamatory meaning. The innocent construction rule does not apply because the whole point of a *per quod* defamation action is to establish the defamatory character of a statement otherwise innocent on its face. (*Mittelman*, 135 Ill. 2d at 233.) Where the extrinsic facts are insufficient to reasonably support the defamatory meaning plaintiff urges, dismissal of the complaint is in order. *Mittelman*, 135 Ill. 2d at 233-34.

■ In this case, plaintiff asserts the fact that defendant denied him a position with the management hierarchy, and Southland Corporation, as well as White Hen Pantry, denied him a franchise, illustrates the defamatory meaning of the statements. However, plaintiff provides no evidence that the denial of the management po-

sition and the franchise was based upon the statements made by defendant. See *Taradash*, 260 Ill. App. 3d at 318.

Plaintiff also contends he sufficiently alleged the requisite special damages for defamation *per quod*. Generally, allegations of damages, such as damages to an individual's health or reputation or general economic loss, are insufficient to state a claim of defamation *per quod*. (*Taradash*, 260 Ill. App. 3d at 318; *Heerey*, 188 Ill. App. 3d at 532-33.) Plaintiff alleged in counts II and IV of his complaint that he was injured and sustained grave economic loss when the franchisors refused to grant him a franchise. Plaintiff relies on *Halpern v. News-Sun Broadcasting Co.* (1977), 53 Ill. App. 3d 644, 368 N.E.2d 1062. However, this reliance is misplaced because the court held that a corporate plaintiff was not required to allege special damages in a defamation *per se* action. (*Halpern*, 53 Ill. App. 3d at 653.) Here, plaintiff claims economic loss from not securing the franchise. This is not considered a special damage for the purpose of a defamation *per quod* claim. Therefore, we hold that the allegations contained in counts II and IV are insufficient to state a cause of action for defamation *per quod*.

## II

Plaintiff's next argument concerns defendant's defense of qualified privilege. First, plaintiff contends the trial court abused its discretion by requiring him to preemptively plead that no qualified privilege existed. Plaintiff argues that defendant's assertion of an affirmative defense within the section 2—615 motion was inappropriate and should not have been part of the trial court's decision regarding the sufficiency of plaintiff's amended complaint. We disagree.

An action may be dismissed pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)) on the ground that a claim asserted is barred by other affirmative matter avoiding the legal effect or defeating the claim. An "affirmative matter" includes something in the nature of a defense that completely negates the alleged cause of action. (*Geick v. Kay* (1992), 236 Ill. App. 3d 868, 874, 603 N.E.2d 121.) Defendant asserted privilege as a defense in his section 2—615 motion. Privilege is regarded as an affirmative defense and, as such, there is no need for a plaintiff to plead facts showing that a communication is not privileged in order to properly allege a cause of action for defamation. (*Beasley v. St. Mary's Hospital* (1990), 200 Ill. App. 3d 1024, 1033, 558 N.E.2d 677.) However, a motion to dismiss may properly raise the issue of privilege. Although these types of hybrid procedures which combine separate motions for joint analysis and determination have been expressly

disapproved and are discouraged, we believe plaintiff was not prejudiced by this combination as he responded to the privilege issue in his memorandum. (See *Geick*, 236. Ill. App. 3d at 879.) Therefore, we will consider the privilege matter on the merits.

■ Plaintiff submits that defendant failed to prove the existence of a qualified privilege. In determining whether a privilege exists, the court looks only to the occasion itself to determine as a matter of law and general policy whether the occasion created a recognized duty or interest that makes the communication privileged. (*Kuwik v. Starmark Star Marketing & Administration, Inc.* (1993), 156 Ill. 2d 16, 24, 619 N.E.2d 129.) In *Kuwik*, the Illinois Supreme Court adopted the Restatement (Second) of Torts approach. Under this approach, three classes of conditionally privileged occasions are recognized: (1) situations in which some interest of the person who publishes the defamatory matter is involved; (2) situations in which some interest of the person to whom the matter is published or of some other third person is involved; and (3) situations in which a recognized interest of the public is concerned. (*Kuwik*, 156 Ill. 2d at 29.) However, the defendant has the burden of proving whether a conditional privilege in an alleged defamation statement exists. *Kuwik*, 156 Ill. 2d at 27.

■ In the instant case, we believe that defendant has a privilege under the second category. Southland Corporation and White Hen Pantry had an interest in the evaluation as a factor to determine plaintiff's capabilities as a franchisee. Although Illinois courts have not addressed whether an employer's statements in response to a prospective employer may be conditionally privileged, the Seventh Circuit of the United States Court of Appeals has held that an employer may invoke a conditional privilege to respond to direct inquiries by prospective employers. (*Delloma v. Consolidation Coal Co.* (7th Cir. 1993), 996 F.2d 168; see *Anderson*, 268 Ill. App. 3d at 917-18.) Also, Illinois courts have recognized an interest of former employers in disclosing limited information to prospective employers. See *Roemer v. Zurich Insurance Co.* (1975), 25 Ill. App. 3d 606, 323 N.E.2d 582 (where court held former supervisor had duty to respond in some manner to inquiries from placement agencies).

However, once a qualified privilege applies, a communication is only actionable if plaintiff can show defendant abused the privilege. An abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties. *Kuwik*, 156 Ill. 2d at 30; *Anderson*, 268 Ill. App. 3d at 918; *Davis v. John Crane, Inc.* (1994), 261 Ill. App. 3d 419, 430, 633 N.E.2d 929, cit-

ing *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 300, 484 N.E.2d 841.

Plaintiff seeks to differentiate the relationships between franchisor-franchisee and employer-employee. However, we believe the difference between the two is in form, rather than substance. Defendant's response to the franchisors in the form of the evaluation was relevant to the type of position plaintiff sought with Southland Corporation and White Hen Pantry. Furthermore, we do not believe defendant abused the privilege. Plaintiff authorized the release of the personnel file to the franchisors, defendant included positive statements and ratings in the request for information, and defendant only published the information to the franchisors designated by Quinn. Therefore, we hold the statements were privileged and defendant did not abuse the privilege.

For the foregoing reasons, we hold that plaintiff failed to state a cause of action for defamation. Therefore, the order of the circuit court of Cook County granting defendant's motion to dismiss is affirmed.

Affirmed.

GORDON and T. O'BRIEN, JJ., concur.