JOHN C. JACOBS, Plaintiff-Appellant, v. MUNDELEIN COLLEGE, INC., *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—91—2569

Opinion filed November 4, 1993.

Susan Ward, of Winnetka, for appellant.

Keck, Mahin & Cate, of Chicago (Robert E. Arroyo and John A. Klages, of counsel), for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

Defendant, Mundelein College, Inc., notified plaintiff, John Jacobs, that his teaching contract with the school would not be renewed for the 1980-81 academic year. Plaintiff subsequently initiated suit against Mundelein and several of its administrators, claiming that they breached and tortiously interfered with his contractual rights in the process of determining not to reappoint him. Summary judgment was granted for defendants, from which plaintiff now appeals. He contends that disputed questions of fact exist as to whether (1) his employment contract required that certain procedures be followed in effectuating his nonrenewal, which were not followed in this case; and (2) defendants Mary Pat Haley, Jean Schmidt, and Mary Stretch intentionally and maliciously acted and conspired in such a way as to make it impossible for Mundelein to comply with the nonrenewal procedures required in the contract.

The following evidence is undisputed.[1] Plaintiff executed a one-year teaching contract with Mundelein to serve as a full-time, non-

---

[1] Although plaintiff apparently filed an affidavit in response to defendants' summary judgment motion, he has failed to include it or any other

tenured, assistant professor of English for the period of September 15, 1979, through September 14, 1980. This was plaintiff's second yearly contract with Mundelein. The contract incorporated by reference the Mundelein faculty handbook (handbook), and provided that any termination of plaintiff's agreement be in accordance with handbook terms. These terms provided that in the event of a decision not to renew a faculty member's contract, the faculty member should be given notice of nonrenewal by December 13 of the academic year.

During plaintiff's employment at Mundelein, Haley was vice-president of academic affairs (vice-president), Schmidt was associate academic dean, and Stretch was associate dean. Catherine Kenney, not a party to this case, was chairman of Mundelein's English and Communications department in which plaintiff was a member.

On November 28, 1979, Haley had a discussion with Kenney regarding whether to renew plaintiff's contract for the 1980-81 school year. The following day, Haley wrote Kenney a letter seeking to obtain advice and comments on the matter from members of the English department and the entire Mundelein faculty. In the letter, Haley expressed personal reservations about plaintiff's reappointment, stating that she had been receiving "negative feedback" regarding his performance and attitude in a remedial writing program he taught and noting that this program had been the basis for his original appointment at Mundelein. On December 6, 1979, Kenney and other members of the English department informed Haley that they unanimously recommended plaintiff's reappointment. Although Haley gave this recommendation "quite a bit of consideration," she elected not to renew his contract for the 1980-81 school year. Haley gave plaintiff written notice to this effect on December 13, 1979.

In January 1980, plaintiff requested a written statement from Haley setting forth the reasons that his contract was not renewed, plus all documents considered in the decision. Haley responded with a letter which included excerpts from numerous memoranda written by persons whose identities Haley did not disclose. Plaintiff then reiterated his request for documentation upon which Haley relied, but Haley refused this request.

---

documents in opposition to the motion in the record on appeal. Additionally, there was no transcript taken at the summary judgment hearing, and plaintiff did not prepare a report of proceedings or bystander's report as provided under Supreme Court Rule 323(c) (134 Ill. 2d R. 323(c)). It was his burden as appellant to provide this court with a complete record to support each of his contentions of error; because he has failed to do so, any doubts arising from such incompleteness will be resolved against him. *In re Marriage of Naylor* (1991), 220 Ill. App. 3d 366, 581 N.E.2d 25.

Plaintiff petitioned the faculty appeals committee (FAC) for a grievance hearing regarding his nonrenewal, charging Mundelein with violations of his academic freedom and due process rights. The FAC chairman requested that Haley disclose the reasons for plaintiff's nonrenewal and the procedures employed in the decision. Haley responded that the nonrenewal of a one-year contract was not a "grievance" within the meaning of the handbook and thus was not subject to grievance procedures. Haley further stated that communications pertaining to a nonrenewal decision were confidential and would not be released.

In return correspondence to Haley, the FAC acknowledged that it was not the proper forum to judge the competence of a faculty member and that it could not prohibit the vice-president from withholding a contract from untenured faculty. However, it also noted a possibility that plaintiff had received insufficient consideration, in light of the fact that his nonrenewal was at variance with the recommendations of Kenney and the English department. The FAC indicated that a grievance hearing would be held if the parties could not reach a private settlement. Haley subsequently agreed to participate in this hearing, as long as it was confined to the issues of plaintiff's academic freedom and the manner in which he was treated while a faculty member; she reiterated that the nonrenewal of plaintiff's contract and the procedures employed in that decision were not appealable.

At plaintiff's hearing, Haley appeared and presented testimony. The FAC then issued its determination that plaintiff failed to prove breach of academic freedom. It also found that there were deficiencies in plaintiff's evaluation process, and procedural violations in that the administration did not engage in adequate consultation with plaintiff's faculty peers regarding the nonrenewal of his contract. Nonetheless, the FAC found that it could suggest no changes for plaintiff, and again stated that it had never questioned the administration's legal right to terminate an untenured employee's contract.

Plaintiff subsequently initiated the instant action in the circuit court. His four-count amended complaint alleged in relevant part that defendants breached his employment contract because, in evaluating his performance and determining whether to renew his contract, they failed to consult with members of his department and to give adequate consideration to "materials customarily used" in evaluating a faculty member's performance. He also claimed that defendants improperly refused to grant him a grievance proceeding on the nonrenewal question and to provide him with documentation relevant to the decision. Additionally, plaintiff charged Haley,

Stretch, and Schmidt with maliciously conspiring to deprive him of his contractual rights by refusing to consult with faculty members in the nonrenewal decision, refusing to provide explanations and documentation supporting this decision, and frustrating his right to a proper grievance hearing. He also alleged that these defendants conspired to interfere with his reasonable expectation of renewal leading to tenure.

Defendants filed a motion for summary judgment, alleging that plaintiff had no contractual right to contest the nonrenewal of his contract, nor any right to the evaluation procedures or documents he sought. Defendants Haley, Schmidt and Stretch further asserted that plaintiff had failed to show that they maliciously conspired to interfere with his rights or with his expectation of tenure. Following a hearing, the trial court granted summary judgment for defendants. The instant appeal followed.

On appeal, plaintiff first argues that disputed questions of fact exist as to whether the handbook, along with a publication by the American Association of University Professors entitled "AAUP Policy Documents and Reports" (AAUP documents), created a contractual right on his part to certain evaluation and grievance procedures prior to the administration's decision not to renew his contract.

■ We initially note that in his briefs on appeal, plaintiff makes several factual assertions which are not adequately supported by citations to the record as required under Supreme Court Rules 341(e)(6) and (e)(7). (134 Ill. 2d Rules 341(e)(6), (e)(7).) It is not this court's duty to search the record for grounds upon which to base a reversal. (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 802, 405 N.E.2d 1051.) To the extent that support for plaintiff's allegations is not readily ascertainable, such allegations will not be considered. *Farwell Construction*, 84 Ill. App. 3d at 802.

Summary judgment is proper where the pleadings, depositions and affidavits show that there is no disputed question of fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005; *Elliott v. Chicago Title Insurance Co.* (1984), 123 Ill. App. 3d 226, 231, 462 N.E.2d 640.) If differing inferences can be drawn from the undisputed facts, then summary judgment should be denied. (*Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 1055, 374 N.E.2d 1302.) In cases where this court must decide the propriety of summary judgment, the standard of review is *de novo*. *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.* (1992), 226 Ill. App. 3d 507, 510, 589 N.E.2d 1034.

■ It is well established that hiring and employment terms are

presumptively subject to the will of the employer unless the parties specifically contract otherwise. (*Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 489, 505 N.E.2d 314; *Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152, 171, 568 N.E.2d 827; *Harrison v. Sears, Roebuck & Co.* (1989), 189 Ill. App. 3d 980, 546 N.E.2d 248.) The supreme court has held that when traditional requirements for contract formation are present, an employee handbook or other policy statement creates binding contractual rights. (*Duldulao*, 115 Ill. 2d at 490.) In order to be considered part of an employment contract, the handbook or policy statement must, first, contain a promise clear enough that an employee would reasonably believe an offer has been made; second, be disseminated to the employee in such a manner that he is aware of its contents and reasonably believes it to be an offer; and third, be accepted by the employee, meaning the employee must commence or continue to work after learning of the policy statement. (*Duldulao*, 115 Ill. 2d at 490.) All three of these conditions must exist in order to create enforceable contract rights. *Thierry v. Carver Community Action Agency of Knox County, Inc.* (1991), 212 Ill. App. 3d 600, 603, 571 N.E. 2d 484.

■ Plaintiff argues that the decision not to renew his contract was made exclusively by Haley, Schmidt and Stretch, when the handbook and AAUP documents mandated that it be done with "a great deal of input from others," including English department chairperson Kenney and other English department faculty. This argument is without merit. The handbook sections upon which plaintiff bases this contention state essentially that, although Mundelein's legal authority is exercised through the administration, the college is administered *with the aid of* established faculty; that the vice-president *shares with department chairpersons* the responsibilities for recruitment and review of faculty members; that department chairpersons annually evaluate each department member and submit these evaluations to Mundelein's president and vice-president; and that the faculty association has *primary responsibility* for such fundamental areas as curriculum, subject matter and methods of instruction, and *faculty status.*

A review of the handbook shows as a matter of law that there was no breach of contract on this point. Although the above provisions generally denote some "shared responsibilities" between administration and faculty chairpersons as to faculty evaluations, they establish no clear role for chairpersons or their evaluations in the contract review process or in the final decision of whether to reappoint a faculty member. More importantly, there is no requirement that the administration defer to or even accept the recommen-

dations of chairpersons or faculty members on the question of contract renewal. While the handbook does delegate to the faculty some authority for the establishment of educational policy, it unquestionably vests the administration with final supervisory authority over department chairpersons and other faculty, along with the ultimate discretion over whether or not to renew contractual obligations. Additionally, there is no dispute that Haley sought and considered faculty input in plaintiff's case. Plaintiff cannot claim that the handbook was violated because the administration's ultimate decision deviated from faculty recommendations.

■ Plaintiff also relies upon a provision in the AAUP documents concerning faculty responsibilities as to determinations of faculty status. His reliance is misplaced. First, although Mundelein did incorporate AAUP material into the handbook, this incorporation was limited to specific, clearly designated provisions; Mundelein opted not to adopt the AAUP publication as a whole and did not incorporate the provision on which plaintiff relies here. Thus, this provision cannot be deemed a contract term. Second, despite plaintiff's unsupported assertion to the contrary, there is no evidence that Mundelein disseminated the AAUP documents to him as required in *Duldulao* (115 Ill. 2d at 490). He did not allege such distribution in his complaint, and in fact admitted in his deposition that he was never informed that Mundelein was governed by the AAUP documents. Therefore, he cannot say that the documents became an enforceable part of his employment contract.

■ Plaintiff also excerpts several provisions which he claims give nontenured professors an expectation of renewal and tenure if they adhere to handbook guidelines. However, these provisions simply detail the qualifications of various levels of instructors and professors and describe some criteria upon which promotion and tenure decisions are based. They convey no promise, express or implied, of renewal of an assistant professor's contract. Additionally, the fact that Mundelein elected to make tenure and promotion criteria available to candidates in no way amounted to a contractual assurance that tenure would be granted. In fact, the very provisions upon which plaintiff relies are prefaced by the following caveat:

> "Promotion in rank is not an automatic advancement. It results from effort, growth, and merit on the part of the individual teacher and from the desire of the College to recognize excellence of performance. Attainment of minimum academic requirements ***, while making the teacher eligible for consideration, does not constitute an automatic claim for promotion. Nor does seniority or length of service in itself constitute such a claim." (Handbook, at B20.)

Plaintiff points to a phrase in the handbook that "tenure *can be expected*" upon promotion to the rank of associate professor, after seven years of full-time college teaching. (Emphasis added.) To the extent this could be construed as a promise for tenure, a question upon which we make no determination here, it would not apply to plaintiff at bar, who at the time of his nonrenewal had attained neither the rank of associate professor nor seven years of college teaching.

■ Additionally, plaintiff maintains that the handbook entitled him to a grievance hearing before the FAC to contest his nonrenewal and to documentation relevant to that decision. The provision in the handbook entitled "grievance procedure" permits a faculty member to submit for resolution as a grievance any concern that he "has been treated unfairly, or that policies of the college have been inappropriately implemented in matters pertaining to terms of employment."

This provision, unlike those in cases where a right to contest a discharge has been found, contains no clear promise of a right to appeal matters of "discharge" or "employment status." (See *Daymon v. Hardin County General Hospital* (1991), 210 Ill. App. 3d 927, 934, 569 N.E.2d 316.) Nor does the handbook contain any requirement that the documents involved be produced to plaintiff. The handbook provision specifically dealing with nonrenewal makes no reference to a grievance hearing or documentation. Noting preliminarily that "[a]ppointments at Mundelein College of faculty without tenure are usually for one year," it merely provides for a time requirement within which notice of nonrenewal must be given. Further, the FAC itself declined to give plaintiff any remedy as to his termination, finding that it lacked authority to intervene in the administration's final decision to deny renewal to an untenured professor. Thus, it cannot be said that plaintiff's contract included an enforceable right to contest nonrenewal.

■ Plaintiff's second contention on appeal is that there are disputed questions of fact regarding whether Haley, Schmidt, and Stretch tortiously interfered with the contractual rights as alleged above. Under Illinois law, the following elements must be proven to establish a claim for tortious interference with contractual relations: (1) the existence of a valid and enforceable contract; (2) defendant's awareness of this contract; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other caused by defendant's wrongful conduct; and (5) damages. (*Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 275 N.E.2d 429.) Because we have determined that plaintiff had no contractual right

to evaluation or grievance procedures beyond those he received, and that he had no expectation of tenure at the time at which he was discharged, the first element of his claim for tortious interference with contractual rights is absent. Accordingly, his contention lacks merit. Plaintiff's amended complaint asserted additional grounds for relief based upon tortious interference with a prospective economic advantage. However, he failed to pursue these issues on appeal through proper argument and citation to case authority and hence has waived them. *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664; *Holmstrom v. Kunis* (1991), 221 Ill. App. 3d 317, 581 N.E.2d 877.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J., and JOHNSON, J., concur.