PATRICIA HENTOSH *et al.*, Plaintiffs-Appellees, v. HERMAN M. FINCH UNIVERSITY OF HEALTH SCIENCES/THE CHICAGO MEDICAL SCHOOL, Defendant-Appellant.

Second District   No. 2—99—0687

Opinion filed July 24, 2000.—Rehearing denied August 15, 2000.

Eric A. Oesterle and Gregory R. Naron, both of Sonnenschein, Nath & Rosenthal, of Chicago, for appellant.

Newton E. Finn, of Waukegan, for appellees.

JUSTICE GALASSO delivered the opinion of the court:

The defendant, the Herman M. Finch University of Health Sciences/The Chicago Medical School (the University), appeals from a trial court judgment awarding the plaintiffs, Patricia Hentosh and Dennis Peffley, damages in the amount of $1.1 million for the University's breach of its contractual duties to the plaintiffs and a declaratory judgment in favor of Dr. Peffley. On appeal, the University contends that the trial court erred in granting judgment to the plaintiffs or, in the alternative, that the damage award was improper as a matter of law. No issue is raised on appeal with regard to the declaratory judgment awarded to Dr. Peffley.

The pertinent facts are summarized below.

The plaintiffs are husband and wife and have been employed by the University as associate professors since approximately October 1990. They have been engaged full time in teaching and research in the University's department of pharmacology and molecular biology.

In 1997, Dr. Gary Oltsman was the interim chairman of the department of pharmacology and molecular biology. In September 1997, Dr.

Oltsman invited all nontenured faculty in the department, which included the plaintiffs, to apply for tenure. The plaintiffs submitted their tenure applications by December 1997. However, the plaintiffs' tenure applications were never submitted to the dean, the faculty peer-review committee, the promotions and appointments committee, or to the University credentials and tenure committee. The plaintiffs were never told that their tenure applications had not been submitted for review.

On January 12, 1998, Dr. Francis White accepted the position of chairman of the department of pharmacology and molecular biology. Originally the appointment was to become effective July 1, 1998; however, the date was changed to March 16, 1998. Dr. White was given authority by Theodore Booden, dean of the medical school, to take part in departmental decisions prior to the effective date of his appointment. He made the decision not to renew the plaintiffs' appointments because they did not fit into the research focus and plans he had for the department once he became the chairman. On March 27, 1998, the plaintiffs were notified that their appointments would not be renewed.

The parties stipulated that the *University By-laws, Regulations, and Faculty Benefits* (bylaws), the *Faculty Handbook of Policies and Procedures* (faculty handbook), and the University's *Guidelines for Appointment, Promotion, and Tenure* created and delineated the contractual rights and duties existing between the University and the plaintiffs. The parties also stipulated to the admissibility of the reports of the experts on the issue of damages.

The facts in this case were either stipulated to by the parties and/or were uncontested. Therefore, as this case presents only questions of law, we shall review the issues *de novo*.

The University contends that the trial court erred in finding that it had breached its contracts with the plaintiffs.

■ The University argues that it properly exercised its right not to renew the plaintiffs' faculty appointments. It is well established that hiring and employment terms are presumptively subject to the will of the employer unless the parties specifically contract otherwise. *Jacobs v. Mundelein College, Inc.*, 256 Ill. App. 3d 476, 480-81 (1993). When traditional requirements for contract formation are present, an employee handbook or other policy statement creates binding contractual rights. *Jacobs*, 256 Ill. App. 3d at 481. In this case, the parties stipulated that such contractual rights have been created by the provisions of the documents referred to above.

We observe that there is no dispute that the University had the authority not to renew the plaintiffs' faculty appointments based upon

Dr. White's determination that the plaintiffs' work did not fit into the plans he had for the department. Other than to extend the date of Dr. Peffley's termination, there was no finding by the trial court that the University did not follow its procedures for terminating the plaintiffs' employment. Nor have the plaintiffs raised any issue in this appeal with regard to their terminations as nontenured faculty.

In order to determine whether the University breached its contracts with the plaintiffs, we must determine first whether the tenure process was actually begun. Secondly, if the tenure process was begun, did the plaintiffs have a right, pursuant to their contracts with the University, to the completion of the tenure process after notification of the nonrenewal of their faculty appointments? In order to resolve these questions, we must review the pertinent portions of the documents comprising the contract between the parties.

We turn first to section 2:1—03 of the bylaws, which states, in pertinent part regarding the granting of tenure, as follows:

"Academic review for awarding tenure is initiated: 1) by the Chair of the department through the Dean of the school, or 2) by the Dean upon petition by eligible full-ranked Faculty following seven years of continuous appointment at the University ***. All such recommendations must then be considered by the appropriate faculty peer-review committee which will be provided for in each school's by-laws. The school's review committee will forward its recommendation to the Dean who conveys it to the University Credentials and Tenure Committee. Upon conclusion of the University Credentials and Tenure Committee deliberations, its recommendation shall be transmitted in writing through the respective Dean to the Chief Academic Officer, and finally to the President of the University. Upon approval by the President and the Board of Trustees, the awarding of tenure shall be made by letter, and signed by the President of the University."

The faculty handbook outlines the same process for obtaining tenure. In addition, however, it further explains the procedure to be followed when the tenure process is activated by the dean of the school as follows:

"(1) *** If not previously initiated, the tenure review process *shall* be activated by the Dean of the school, following seven years of continuous appointment at the University for eligible Faculty ***.

* * *

Full-time Faculty who have achieved the rank of Associate Professor or Professor, and have not been previously tenured, are eligible to be considered for tenure by the appropriate academic committee in their respective schools following a period of seven years of continuous appointment to the University. *This review shall be ini-*

*tiated by the Dean, upon petition of the eligible Faculty member.*" (Emphasis added.)

It is undisputed that neither Dr. Oltsman nor Dr. White, as the department chair, made a tenure recommendation for the plaintiffs to Dean Booden. Therefore, the first method of initiating tenure review does not apply in this case. As for the second method, while the plaintiffs were eligible faculty, since they both had seven years' continuous service and had achieved the rank of associate professor, the University points out that the plaintiffs do not dispute the fact that they did not file petitions with the dean.

The term "petition" is not defined in the contracts between the parties. When construing a contract, the contractual terms are given their plain and ordinary meaning. *Reaver v. Rubloff-Sterling, L.P.*, 303 Ill. App. 3d 578, 581 (1999). The term "petition" is defined as "a formal written request addressed to an official person or organized body." Webster's Third New International Dictionary 1690 (1993). Here, the plaintiffs submitted their applications for tenure review in December 1997. Such applications meet the "plain and ordinary meaning" of the term "petition." Moreover, while the process is "initiated by the Dean upon petition by the eligible Faculty member," nothing in that language mandates that the petition be sent directly to the dean. Here, the plaintiffs' applications for tenure were submitted, apparently, to Dr. Oltsman. It is clear that by submitting their applications the plaintiffs were making a formal request for tenure. We therefore conclude that, by submitting their applications for tenure review, the plaintiffs were, in effect, petitioning for tenure review, which the dean was then required to initiate under the terms of the contracts between the plaintiffs and the University.

The plaintiffs submitted their applications for tenure review in December 1997. The plaintiffs were notified on March 27, 1998, that their appointments would not be renewed. Pursuant to the contract between the parties, at the time of the notification of nonrenewal, the tenure review process should already have been underway. However, it is undisputed that this was in fact not the case and that the plaintiffs' tenure applications were never submitted to the dean or the other appropriate committees. Nevertheless, the terms of the contracts between the parties make it mandatory for the dean to initiate the tenure review process once the plaintiffs, as eligible faculty, submitted their applications.

We therefore conclude that the process for tenure review for the plaintiffs had begun in this case prior to the decision not to renew their appointments. We must now determine if, pursuant to their contracts with the University, the plaintiffs had the right to the

completion of the tenure review process after their appointments were not renewed. There is no specific provision in the bylaws or faculty handbook that prevents the University from refusing to renew the plaintiffs' appointments because they had applied for tenure.

In *University of Baltimore v. Iz*, 123 Md. App. 135, 716 A.2d 1107 (1998), Dr. Iz had a tenure-track contract with the University of Baltimore (the School) that provided that she would be reviewed for tenure in the 1993 academic year, later amended to 1994, in accordance with the School's terms and conditions for conferring tenure. Dr. Iz elected to apply for tenure in 1993 under the School's policy which permitted early tenure review without penalty. At the conclusion of the tenure review process, Dr. Iz was denied tenure, and her contract with the School was terminated. Dr. Iz brought suit against the School, alleging, *inter alia*, a breach of contract. The jury found that the School had breached Dr. Iz's employment contract and awarded her damages.

On appeal, the reviewing court noted that, while an employer may terminate an at-will employee at any time for almost any reason, an exception exists where the at-will employment relationship is modified by the provisions of an employee handbook or the provisions of an employment policy. *Iz*, 123 Md. App. at 171, 716 A.2d at 1125. The court found that it was:

> "undisputed that Dr. Iz was not an at-will employee. Instead, she was entitled to tenure review, in accordance with her contract and the School's promotion and tenure polices." *Iz*, 123 Md. App. at 171, 716 A.2d at 1125.

Ultimately, the reviewing court determined that there was insufficient evidence that the School failed to follow its tenure procedures or that it acted in bad faith in denying tenure to Dr. Iz and reversed the judgment in her favor.

Like Dr. Iz, the plaintiffs had a right to be reviewed for tenure pursuant to the terms of their contract with the University. While there is no specific provision dealing with the situation in which the plaintiffs found themselves, we believe the provisions contained in the bylaws and the faculty handbook dealing with the tenure review process mandate that, once the tenure review has been initiated, the process must be completed, even in the situation where the employee has been informed that his or her employment will be terminated.

Just as Dr. Iz's right to tenure review was found in the terms of her employment contract, we believe that the provisions of the bylaws and the faculty handbook, which form the contracts between the University and the plaintiffs, provide the same right to tenure review. As we previously found, the plaintiffs had sought tenure review

through the second method available to them, *i.e.*, petitioning for tenure review. Once their petitions were submitted, the bylaws provide that, regardless of which method of tenure review is commenced, the recommendations *must* be considered by the appropriate faculty peer-review committee. Contrary to the University's argument, once the tenure review process was initiated, the bylaws and the faculty handbook did grant the plaintiffs "tenure-like" protection in that the University was required to complete the tenure process once it was begun regardless of its decision not to renew the plaintiffs' appointments.

We find that *Williams v. Weaver*, 145 Ill. App. 3d 562 (1986), and *Fleischer v. Board of Community College District No. 519*, 128 Ill. App. 3d 757 (1984), both of which are relied upon by the University, are distinguishable from the present case. In *Williams*, the plaintiff's one-year teaching contract was not renewed. The plaintiff sued the board of trustees, contending that the board's failure to comply with the evaluation procedures required by a collective bargaining agreement constituted a breach of his employment contract. The reviewing court upheld the trial court's dismissal of the complaint. The court determined that the board's power to terminate the plaintiff's employment could not be controlled by the terms of the collective bargaining agreement and, therefore, the board had no duty to ensure that the evaluation process was completed. *Williams*, 145 Ill. App. 3d at 570. However, in the present case, the University's own bylaws and faculty handbook provisions require that, once tenure review has been initiated, the process must be completed. In *Fleischer*, the reviewing court rejected the plaintiff's argument that he was entitled to automatic tenure under the provisions of a newly enacted statute, since his employment contract was still in existence at the time the statute became effective even though he had been notified that his teaching contract would not be renewed. This court held that, for purposes of acquiring tenure pursuant to the statute, the plaintiff was not "employed" based upon the prior notice of the nonrenewal of his contract. *Fleischer*, 128 Ill. App. 3d at 761. In the present case, tenure review had already been initiated prior to the decision not to renew the plaintiffs' appointments. More importantly, unlike the plaintiffs in *Williams* and *Fleischer*, who had no basis for assuming continued employment or receipt of tenure, in the present case, once the plaintiffs had become eligible for tenure and had taken the necessary steps to initiate tenure review, based upon the bylaws and the faculty handbook provisions, they had a reasonable expectation that the tenure review process would be followed to completion.

Therefore, we conclude that, by failing to allow the tenure process

to proceed to completion, the University breached the terms of its employment contracts with the plaintiffs.

The University then contends that the trial court erred as a matter of law when it determined that the plaintiffs would have been granted tenure had the tenure process been completed. Having found that the University breached its contract with the plaintiffs, the trial court noted that, while there was no guarantee that the plaintiffs would have received tenure upon the completion of their reviews, it believed that all the indications were that the plaintiffs would have received tenure.

The plaintiffs respond that the University waived its right to complain on appeal that the trial court lacked the power to determine whether they would have received tenure when it elicited testimony by Dr. Hentosh that she believed that she would receive tenure based upon her tenure review conference with Dr. Oltsman and Dr. Mosnaim wherein they told her that she was a moderately strong candidate for tenure. We disagree. Regardless of Drs. Oltsman's and Mosnaim's views of whether tenure would be granted, the ultimate decision was not theirs to make.

The provisions of the bylaws and the faculty handbook describe the qualifications and the procedures for tenure review. The fact that the University elected to make this information available to candidates for tenure in no way amounts to a contractual assurance that tenure would be granted. See *Jacobs*, 256 Ill. App. 3d at 482. A faculty member who has satisfactory qualifications in every category is not necessarily assured the award of tenure. *Iz*, 123 Md. App. at 167, 716 A.2d at 1123. In *Keddie v. Pennsylvania State University*, 412 F. Supp. 1264 (M.D. Pa. 1976), the district court declined to undertake a *de novo* review of the plaintiff's academic performance and qualifications, stating as follows:

> "This court is powerless to substitute its judgment for that of the University as to whether plaintiff's academic credentials are such that tenure should have been awarded. The judiciary is not qualified to evaluate academic performance. The courts do not possess the expert knowledge or have the academic experience which should enlighten an academic committee's decision. The courts will not serve as a Super-Tenure Review Committee. [Citations.]" *Keddie*, 412 F. Supp. at 1270.

See also *Iz*, 123 Md. App. at 177, 712 A.2d at 1128 (even if Dr. Iz had received favorable reviews at all levels of the process, Dr. Turner was still not obligated to award tenure).

The case before us is distinguishable from *Lewis v. Loyola University*, 149 Ill. App. 3d 88 (1986). In that case, it appeared that, but for

an oversight, the plaintiff would have received tenure. *Lewis*, 149 Ill. App. 3d at 94. In the case before us, the outcome of the plaintiffs' requests for tenure was more uncertain.

We agree with the University that the trial court lacked the authority to make the tenure determination in this case. The proper recourse in cases such as this is for the trial court to remand the case to the institution for the completion of the tenure review process in accordance with its established procedures. While the trial court expressed doubt that plaintiffs would receive fair tenure reviews, the University is obligated to follow its tenure review procedures in determining whether to award tenure to the plaintiffs. Nor may the reviewing procedures be merely a sham to ratify the decision to terminate the plaintiffs' appointments. See *Iz*, 123 Md. App. at 177, 716 A.2d at 1128.

■ In summary, the trial court correctly found that the University breached its contracts of employment with the plaintiffs. However, inasmuch as the damage award in this case was based upon the trial court's determination that the plaintiffs were denied tenure review, we vacate the damage award and remand this cause to the trial court for the entry of an order requiring the University to conduct tenure review for both of the plaintiffs following the procedures set forth in the applicable provisions of the bylaws and the faculty handbook. In light of the trial court's concerns and to insure that the plaintiffs' tenure review is conducted fairly, on remand, the trial court shall enter an order enjoining any faculty member who participated in the decision to terminate the plaintiffs' appointments from participating in the tenure review process for the plaintiffs.

The judgment of the circuit court of Lake County is affirmed in part and vacated in part, and the cause is remanded with directions.

Affirmed in part and vacated in part; cause remanded with directions.

COLWELL and HUTCHINSON, JJ., concur.